463 A.2d 478

**William HUGHES and Nancy Hughes, Appellants,**

v.

**Sharon HUGHES.**

Superior Court of Pennsylvania.

Submitted May 11, 1983.

Filed July 22, 1983.

Larry Alan Brand, Wilkes-Barre, for appellants.

Ruth Slamon Borland, Wilkes-Barre, for appellee.

Before WICKERSHAM, WATKINS and MONTGOM-ERY, JJ.

WATKINS, Judge:

This case comes to us on appeal from the Orphans' Court of Luzerne County, and involves a father's and his mother's (paternal grandmother's) appeal from an order of the court below which denied both appellants' requests for visitation rights for a three year old child.

The appellant-father and appellee (the child's mother) had been married but are now divorced. One child, a son, was born of the marriage. He is three years of age. Appellee has had sole custody of the child since July 22, 1981. On or about that date the appellant-father broke into the apartment of the appellee and shot her in the shoulder with a 30–30 rifle while she was holding the child. The child has suffered nightmares as a result of this incident. The appellant-father is now in prison and seeks to compel visitation with the child at the Luzerne County Prison. The testimony at trial indicated a long pattern of physical abuse inflicted upon the appellee by her husband. On one occasion he had entered her apartment in violation of a protective order and held her and the child hostage for eight (8) hours. During this time he threatened the appellee saying that he would kill her and himself.

Prior to the shooting incident the appellant-father had only sporadic contact with the child and had shown little interest in him. Appellant-grandmother had also had minimal contacts with the child. Up until he shot her, the appellee had permitted the appellant-father to visit with the child.

After the trial, the court below entered an order denying the visitation requests of both appellants. They have appealed that order.

Appellants argue that the court below erred when it concluded that visitation with his father would have a severe adverse impact upon the child. Appellant-father argues that the shooting incident is the only time that he

endangered the boy directly and argues that this should not curtail his rights to visitation because he was voluntarily intoxicated at the time. We do not agree. A parent should seldom be denied the right to visit with his child. However, when a severe mental or moral deficiency constitutes a threat to the welfare of the child, visitation rights may be denied to a parent who manifests such a condition. *Sorace v. Sorace*, 236 Pa.Superior Ct. 42, 344 A.2d 553 (1975). Appellant-father has manifested severe mental or moral deficiency constituting a threat to the child's well-being. His act of shooting the child's mother while the child was in her arms is sufficient to manifest a reckless and wanton lack of concern for the child's welfare. Furthermore, his constant course of abuse directed at the child's mother confirms his moral deficiency. His drunkeness is no excuse for such conduct. In fact, in our opinion, it is another factor manifesting his mental and moral deficiency. The court below did not err in finding appellant-father to be unfit for visitations with the child and that such visitations would be contrary to the child's best interests.

Next, appellants claim that the court below erred in finding that appellant-grandmother would use any visitation rights granted to her to disrupt the child's relationship with his mother. The court below stated its belief that her attempt to obtain visitation was a ruse and that it was "an attempt to obtain through the back door what is not possible by the front". Appellee testified at trial that her former husband's mother had only minimal contacts with the child and had even refused visitation with the child that had been offered her. The court believed that appellant-grandmother's request for visitation did not arise from a bona fide interest in maintaining a beneficial relationship with the child. We agree. The recently adopted "Custody and Grandparents Visitation Act", 23 P.S. 1001, et seq., which took effect on January 5, 1982 did not alter the present state of the law but merely codified the law which had evolved through various appellate decisions dealing with the rights of grandparents in seeking visitation and/or custody of their grandchildren. The guiding polestar in

deciding all cases involving a child, including whether grandparent visitation rights should be awarded is the best interests of the child. *Commonwealth ex rel. Parikh v. Parikh*, 449 Pa. 105, 296 A.2d 625 (1972). The court below found that there is great bitterness between appellee and appellant-grandmother and that the grandmother was acting as a substitute for the child's natural father. It further found that there was no beneficial relationship between the child and his paternal grandmother to be maintained and that to grant visitation rights to her would be contrary to the best interests of the child. It reasoned that the grandmother's former lack of interest in the child and present bitterness toward the appellee would result in a detriment to the child. We agree and hold that the court below did not err in denying her visitation privileges.[1]

Order affirmed.

---

1. Appellant-grandmother also claims that the court below erred in deciding that she was to be treated as a third party in this case because she had had minimal contacts with the child, thus altering the legal standard by which her visitation claim is to be decided. Because we find that granting her visitation rights would be detrimental to the child due to the bitterness that exists between her and the appellee we need not consider that claim. Of course, the fact that she had had little prior contact with the child is a fact which helps us decide that her visitation petition is something other than a bona fide manifestation of interest in the child.