## Earon v. Earon

[redacted]

*Frank Miceli,* for plaintiffs.
*Donald Faulkner,* for defendant Colette Earon.
*Darl J. Earon Jr.,* in propria persona.

BROWN, *P.J.,* February 9, 1991 — Defendants are the natural parents of Laura Marie Earon who was born on April 3, 1985. Laura is the subject of these partial custody proceedings. She is presently five years of age and attends kindergarten at the Salona Elementary School from about 8 a.m. until 2:30 p.m.

Plaintiffs are Laura's paternal grandparents. For the first several years of Laura's life plaintiffs as grandparents occupied a relationship with Laura that provided for frequent contacts and also resulted in the development of a close relationship. This relationship included attendance at various family gatherings including reunions and on special holidays. In this regard both plaintiffs have extensive family consisting of parents, brothers and sisters and nieces and nephews. The family attends several family reunions each year and during her early years Laura attended these reunions.

In November 1988 defendants' marriage broke up, at which time defendants separated. They were divorced on February 22, 1989. After the separation

and divorce defendant Darl Earon Jr. returned home to live with plaintiffs, his parents.

On March 11, 1989 a custody decree was entered which provided for defendants to have shared legal custody of Laura, with defendant Colette Earon, Laura's natural mother, to have primary physical custody and with defendant Darl J. Earon Jr. to have rather liberal partial custody privileges. These included every Wednesday from 5:30 p.m. until 8 p.m., two weeks each summer, Laura's birthday from 3 p.m. until 8 p.m., the division of Christmas Day predicated upon even and odd numbered years, an alternating of traditional holidays in even and odd numbered years, and alternating weekends from 10 a.m. on Saturdays until 8 p.m. on Sundays. It is the court's understanding that these visitation rights have been exercised in accordance with the aforesaid decree.

Plaintiffs have filed the present petition seeking an award of partial custody privileges in their own right and not derivative from the rights of their son, Darl J. Earon Jr. Specifically, plaintiffs have alleged that they have not been able to do things with Laura on their own time without cutting into Darl Jr.'s partial custody privileges.

In this regard plaintiffs have made five specific requests to the court. They wish to have court-ordered partial custody privileges for some period of time on each of their respective birthdays. Mr. Earon's birthday is on May 4 and Mrs. Earon's birthday is on July 31. Secondly, they wish to have Laura made available for partial custody privileges for family reunions. Third, they wish to have Laura made available for one day during the Thanksgiving season and one day between Christmas and New Year's. Fourth, they wish to have one week of visitation every other year. Fifth and finally, they

are requesting a weekend of visitation once every three months for a period from Friday evening through Sunday evening.

## ISSUE

Whether plaintiffs/grandparents are entitled to an award of partial custody or visitation under 23 Pa.C.S. §5312 when they see the grandchild regularly pursuant to their son's partial custody.

## DISCUSSION

Plaintiffs have stated a claim under the Custody and Grandparents' Visitation Act, 23 Pa.C.S. §5301 et seq. Although the complaint is styled as a "complaint for grandparents' partial custody," the order of court prepared by plaintiffs' counsel and filed December 18, 1989 suggests plaintiffs are seeking either partial custody or visitation. Accordingly, the court will address both partial custody and visitation. The original Custody and Grandparents' Visitation Act, 23 Pa.C.S. §1001 et seq.[1] took effect January 5, 1982 and "merely codified the law which had evolved through various appellate decisions dealing with the rights of grandparents in seeking visitation and/or custody of their grandchildren." *Hughes v. Hughes,* 316 Pa. Super. 505, 463 A.2d 478 (1983). In 1985 the General Assembly repealed the original act and re-enacted it in its current form, 23 Pa.C.S. §5301 et seq.[2]

The applicable section to this action is section 5312, which provides:

[1]. Act of November 5, 1981, P.L. 322, no. 115, §§ 1-15.

[2]. Act of October 30, 1985, P.L. 264, no. 66 §3.

"§5312. *When parents' marriage is dissolved or parents are separated*

"In all proceedings for dissolution, subsequent to the commencement of the proceeding and continuing thereafter or when parents have been separated for six months or more, the court may, upon application of the parent or grandparent of a party, grant reasonable partial custody or visitation rights, or both, to the unmarried child if it finds that visitation rights or partial custody, or both, would be in the best interest of the child and would not interfere with the parent-child relationship. The court shall consider the amount of personal contact between the parents or grandparents of the party and the child prior to the application."

This section differs from the corresponding section to the original act, 23 Pa.C.S. §1013, in only two respects: (1) dissolution of the marriage is no longer a prerequisite — a six-month separation will suffice; and (2) a grandparent may now seek visitation and/or partial custody rather than simply visitation.

The burden of proof for grandparents seeking custody or visitation is as follows:

"[I]n a dispute between a parent and a third party, including a relative such as a grandparent, the parent has a prima facie right to custody, which will be forfeited only if convincing reasons appear that the child's best interest will be served by an award to the third party. *In re Hernandez,* 249 Pa. Super. 274, 287, 376 A.2d 648, 654-5 (1977). Since visitation is correlative to custody a similar test should apply when a third party seeks visitation, although the burden on the third party should not be so heavy, for an order granting visitation is a far lesser intrusion, or assertion of control, than is an award of custody. . . .

"When seeking visitation, a third party must show reasons to overcome the parent's prima facie right to uninterrupted custody. However, the reasons need not be so convincing as in a custody case. In a custody case, the third party must convince the court that it is in the child's best interest to take custody from a parent and award it to a third party. In a visitation case, the third party need only convince the court that it is in the child's best interest to give some time to the third party. As the amount of time requested moves the visit further from a visit and closer to custody, the reasons offered in support of the request must become correspondingly more convincing." *Commonwealth ex rel. Williams v. Miller,* 254 Pa. Super. 227, 385 A.2d 992 (1978). (emphasis supplied)

The Supreme Court of Pennsylvania has characterized this standard as a "sliding scale" approach. *Commonwealth ex rel. Zaffarano v. Genaro,* 500 Pa. 256, 455 A.2d 1180 (1983).

In *Hughes, supra,* the Superior Court noted that "[t]he guiding polestar in deciding all cases involving a child, including whether grandparent visitation rights should be awarded, is the best interest of the child." The Supreme Court of Pennsylvania has defined the "goal" of custody and visitation awards as "foster[ing] those relationships which will be meaningful for the child, while protecting the child from situations which would have a harmful effect." *Zaffarano, supra.*

Normally grandparents seek visitation or partial custody under this section when their child, the parent of the grandchild[ren] in question, is unavailable or does not have custody or visitation rights. See, e.g., *Bucci v. Bucci,* 351 Pa. Super. 457, 506

A.2d 438 (1986) (father in prison); *Bishop v. Piller,* 43 Lehigh L.J. 429 (1990) (father in prison); *Pipp v. Pipp,* 17 Lycoming Rep. 354 (1989) (father in military); *Pluebell v. Greenaway,* 28 D.&C. 3d 466 (1984) (father "absent"). At least one court has ruled, however, that grandparents state a claim under section 5313 even where their child is in the picture and has visitation rights. *Baron v. Klein,* 24 D.&C. 3d 53 (1982) (court dismissed natural mother's demurrer to complaint filed by paternal grandmother). The court in *Baron* noted that in ruling on the merits of the complaint it would consider (1) the relationship between the grandmother and her son, the children's natural father; (2) the extent of the natural father's visitation rights; and (3) the relationship between the grandmother and grandchildren prior to this action.

Clearly the courts do not look at the grandparents' rights in a vacuum. Normally if a father has the legal right to visit with his children, he will provide his parents access to their grandchildren. The *Baron* court indicated that the first factor it would consider was the grandparent/parent relationship. Likewise, in *Pluebell,* the court noted that the father was absent and that "if he were present, [he] could assure access to the grandmother and stepgrandfather." 28 D.&C. 3d at 468.

To award partial custody to plaintiffs in this action would require that the court *take custody* from one of the natural parents. Plaintiffs do not dispute that they see their grandchild when she is in her father's custody. Plaintiffs insist, however, that they want a period of time with the child that will not cut into their son's time with the child. In other words, they are interested in cutting into the natural mother's time with the child. Plaintiffs have failed to convince

the court that it is in their grandchild's best interests to have the court carve up her time three ways.

The court believes it is in the child's best interest to maintain meaningful relationships with her paternal grandparents. The court is confident that she will be able to do so without a court order. There is no evidence that plaintiffs are not seeing their granddaughter. On the contrary, plaintiffs' son, who has liberal custody privileges, is living with plaintiffs. Thus, when the child visits her father, she also sees her grandparents. Moreover, it appears to the court that in the past calendar year (1990) on various occasions defendant's partial custody privileges, particularly during the summer, coincided with various reunions and events for which plaintiffs as grandparents wished to have Laura. In summary, were the court to award visitation or partial custody to plaintiffs, which the court will not do, it would do so by reducing Darl J. Earon Jr.'s partial custody privileges. See *Agati v. Agati,* 342 Pa. Super. 132, 492 A.2d 427 (1985). The court believes plaintiffs can work out some sort of de facto arrangement with defendants that will enable plaintiffs to enjoy the company of their grandchild on special occasions.

The court is not unsympathetic with the plaintiffs' position as grandparents. Furthermore the court agrees with the principle that Laura should have a meaningful relationship with plaintiffs as grandparents as well as with her maternal grandparents. The issue is not whether she should have such a relationship but the extent to which she should have it taking into account the reality that her parents are separated and the court's first obligation is to provide for the needs of each of the parents.

In attempting to analyze and treat plaintiff's request with some degree of fairness and reasonableness the court is faced with the inescapable given in

this case that the court has only the time of one child which in the first instance has already been carved up between the two parents. This in itself usually presents a difficult task. To recognize plaintiffs' claim under the present circumstances would require the court to carve up the child's time among three people. It is also theoretically possible that the maternal grandparents would have the same rights as the paternal grandparents which creates a prospect of further division of the child's time between four different households. It could even be observed that in some cases grandparents themselves are separated or divorced and the court could be involved in even further divisions with five or six people. The precedent that would be set in a case like this of allowing partial custody privileges to the grandparents when they already have access to the child through their son is one which the court chooses not to set.

In assessing the provisions of section 5312, the court notes that the legislature has provided that the court *may* grant visitation rights or partial custody in this situation. It is the court's considered judgment that given the circumstances of the case the discretion reposed in it by the legislature mandates that such a request not be granted at the present time. In making this decision the court means to encourage the parties to work out meaningful times for the fostering of Laura's relationship with her grandparents and this could well include being able to see them on their respective birthdays for a reasonable period of time. The court is aware that certain hostilities still pervade the dissolution of the marriage and have carried over to the respective families that suffer from that dissolution, but it is also to be noted that with the passage of time those hostilities should subside and all parties should act ac-

cordingly in the best interest of the child who was the unwilling and blameless participant in the dissolution.

## ORDER

And now, February 9, 1991, based upon the foregoing opinion, it is hereby ordered that plaintiffs' complaint for grandparents' partial custody be dismissed and the requested relief denied.