635 A.2d 1074

**Luther C. GREEN and Cecelia D. Green,**

**v.**

**Carroll Bradford SNEERINGER, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 5, 1993.

Filed Dec. 23, 1993.

Application for Reargument or Reconsideration Denied Feb. 25, 1994.

Charles H. Field, Gettysburg, for appellant.

Walton V. Davis, Gettysburg, for appellees.

Before CIRILLO, HUDOCK and CERCONE, JJ.

CIRILLO, Judge:

This is an appeal from an order of the Court of Common Pleas of Adams County denying appellant Carroll Bradford Sneeringer (Father) visitation with his son. We affirm.

Father was convicted of first-degree murder. The victim, Father's girlfriend, was the mother of their two year old child. Following his conviction, Father was sentenced to life imprisonment.

The child is currently in the custody of Luther and Cecilia Green, the child's maternal aunt and uncle. Father, under the circumstances, did not oppose custody. He did, however, seek

visitation rights.[1] The maternal aunt and uncle opposed Father's petition for visitation. Following a hearing, the trial court denied Father's request.

In its ruling, the court acknowledged that it had accepted Father's offer of proof with respect to the testimony of Bernard Yannetti, Warden of Adams County Prison. The court accepted the following: (1) that Father was entitled to one visit per week; and (2) that if the Warden agreed, these visits could be contact visits. The court determined, however, that it was not in the child's best interests to allow visitation.

In his appeal,[2] Father presents three issues:

Whether the hearing afforded Father sufficient due process when deciding his visitation rights?

Whether a court can deny a parent visitation solely because of a homicide conviction?

Whether the hearing judge applied the correct legal standard to decide a parent's visitation rights?

"The law protects the natural parent's relationship with his or her child and will not interfere unnecessarily with that relationship[.]" *Jackson v. Garland*, 424 Pa.Super. 378, 622 A.2d 969 (1993). The General Assembly has declared:

[I]t is the public policy of this Commonwealth, when in the best interest of the child, to assure reasonable and continuing contact of the child with both parents after a separation or dissolution of the marriage....

23 Pa.C.S. § 5301. *See Commonwealth ex rel. Lotz v. Lotz*, 188 Pa.Super. 241, 246, 146 A.2d 362, 364 (1958) (it is against public policy to destroy the relationship of parent to child).

In his Pa.R.A.P. 1925(a) opinion the Honorable Oscar F. Spicer concluded that he did not find "mandatory trips to the prison to be in the child's best interest." Father argues that the trial court did not utilize the correct standard. Father

1. Visitation, as distinguished from partial custody, is "the right to visit a child, but does not include the right to remove the child from the custodial person's control." *See* Pa.R.C.P. 1915.1.

2. This court, in an order dated April 3, 1993, denied Father's petition for relief pending appeal.

contends that the correct standard is whether the parent poses a grave threat to the child, not whether visitation is in the best interest of the child.

This court has previously stated:

The best interest standard has long been the the guiding principle in determining custody cases. [ ] In dealing with visitation rights, however, the stricter "grave threat" standard has long prevailed.

Only when the evidence clearly shows that a [parent] is unfit to associate with [his or her] children should [he or she] be denied the right to see them.

*In re Damon B.*, 314 Pa.Super. 391, 394, 460 A.2d 1196, 1198 (1983) (quoting *Commonwealth ex rel. Turner v. Strange*, 179 Pa.Super. 83, 115 A.2d 885 (1955) (citations omitted)).

Here, it is not entirely clear what standard the trial court utilized; it is clear, however, that the court was presented with the "grave threat" standard and with case law and arguments to that effect. It is also clear that the trial judge concluded his opinion with a statement that visitation would be detrimental to the child's best interests.

In *Damon B.*, this court was presented with a similar argument. There, the the trial court had reduced the mother's visitation. On appeal the mother claimed that a parent's right to visitation can be limited or denied only if the parent possesses severe mental or moral deficiencies that constitute a grave threat to the welfare of the child. *Damon B.*, 314 Pa.Super. at 394, 460 A.2d at 1198. Mother contended that the trial court's use of the "best interests" standard was incorrect and that the trial court's specific finding of a lack of evidence substantiating moral or mental deficiencies precluded limitation or reduction of her visitation. Defining the standard, this court stated:

[W]e agree that the best interest standard is inappropriate. This error, however, does not necessarily require that we reverse the order reducing visitation, since we may affirm an order for reasons other than those given by the trial court.

*Damon B.*, 314 Pa.Super. at 395, 460 A.2d at 1198 (citing *Weber v. Lynch*, 237 Pa.Super. 48, 346 A.2d 363 (1975) and *In re King's Estate*, 183 Pa.Super. 190, 130 A.2d 245 (1957)). The court pointed out that the case before it was one of those "rare instances" in which it has "approved restricting or temporarily suspending visitation even though there has been no showing of such severe mental or moral deficiencies in the parent as would constitute a grave threat to the child's welfare." *Damon B.*, 314 Pa.Super. at 395, 460 A.2d at 1198.

▋ Although not the precise situation here, we find *Damon B.* analogous to the extent that the court's error in incorporating the "best interest" standard, of itself, does not necessarily require that we reverse or remand. We take this opportunity to emphasize that, although the best interest of the child is always our overriding concern, the appropriate standard to apply when presented with the issue of parental visitation is whether the parent suffers from mental or moral deficiencies which pose a grave threat to the child. *Id.*; *Commonwealth ex rel. Peterson v. Hayes*, 252 Pa.Super. 487, 381 A.2d 1311 (1977).

▋ In this case, however, as we have noted above, the court was presented with the correct standard and with arguments to that effect. The court's brief opinion in this case makes a general reference to the child's best interests in the last sentence: "Under the circumstances, the undersigned did not find mandatory trips to the prison to be in the child's best interest." Although it appears that the court utilized both standards and found it unnecessary to hear evidence of the father's relationship with his child, we are unable to conclude that either of these deviations requires reversal or remand in this case. *See Hughes v. Hughes*, 316 Pa.Super. 505, 463 A.2d 478 (1983) (court utilized both standards, finding that father's act of shooting the child's mother while the child was in her arms and his constant abuse toward the mother confirmed the father's moral deficiency and concluding that the trial court did not err in finding father unfit for visitation and that visitation would not be in the child's best interest); *see also Commonwealth ex rel. Sorace v. Sorace*, 236 Pa.Super. 42, 344

A.2d 553 (1975) (father may not be denied visitation rights with children unless such visits will be detrimental to the best interests of the children; fact that father was living with woman in extramarital relationship did not amount to severe moral deficiency constituting a grave threat to the welfare of the children).[3]

Furthermore, unlike the trial court in *Damon B.*, which specifically found a lack of evidence substantiating the parent's mental or moral deficiencies, the trial court here was presented with the stipulation of a first-degree murder conviction. Though the court did not expressly state as much in its opinion, we find, for the reasons that follow, that this was sufficient evidence substantiating the father's moral deficiency.

Where a father engages in the premeditated killing of the mother of his infant child, *a fortiori* he possesses a moral deficiency constituting a grave threat to the child. Although the circumstances of the killing and the father's conviction of first-degree murder are not a part of this record, we are unable to escape the obvious suggestion that the father's actions indicate a complete disregard for the child's welfare. Barring criminal acts committed upon the child, we can think of no action in which a parent could engage posing a graver threat to a child's welfare than killing the other parent. In one grim swoop, the father has deprived his child of both parents' guidance and support. We find, therefore, that fa-

---

**3.** We note that the *Hughes* court made reference to the best interests of child when passing upon the question of whether the father's visitation would have posed a grave threat to the child. After applying the grave threat standard, the *Hughes* court concluded: "The court below did not err in finding appellant-father to be unfit for visitations with the child and that such visitations would be contrary to the child's best interests." *Hughes*, 316 Pa.Super. at 508, 463 A.2d at 479. Similarly, in *Sorace, supra*, the court made reference to both standards, using the best interests of the child as the general standard, and utilizing the grave threat standard as the test for determining when a limitation or restriction in parental visitation is required. It approaches an exercise in semantics, however, to argue that a statement to the effect that our overriding concern is the best interests of the child precludes a proper consideration of the grave threat standard. The two standards, though distinct, are related. In any event, we believe that the *Damon B.* court has clarified this matter.

ther's first-degree murder conviction for the killing of a child's mother is, in itself, evidence of severe mental or moral deficiencies in the parent as would constitute a grave threat to the child's welfare. *Damon B., supra.* The court's refusal to hear evidence of the preexisting relationship between father and son is, therefore, of no consequence. *See Sorace, supra* (parent should seldom be denied right to visit with his child, but when severe mental or moral deficiency constitutes threat to child's welfare, visitation rights may be denied to parent who manifests such condition); *Scarlett v. Scarlett,* 257 Pa.Super. 468, 390 A.2d 1331 (1978) (visitation may be limited or denied in a custody case only where a parent has been shown to suffer from severe mental or moral deficiencies that constitute a grave threat to the child); *cf. In re Constance W.,* 351 Pa.Super. 393, 506 A.2d 405 (1986) (trial court's order forbidding a father to see his child for a year was held to be unreasonable where the record failed to show that the father's "impulsive and somewhat irrational behavior" had any harmful effect upon the child).

Order affirmed.