906 A.2d 596 (2006)
In the Matter of A.K. and L.K., Minors.
Appeal of C.P.K., Natural Father.
In the Matter of A.K. and L.K., Minors.
Appeal of C.C., Natural Mother.
Superior Court of Pennsylvania.
Submitted May 15, 2006.
Filed August 17, 2006.
*598 Kathleen K. Shaulis, Carlisle, for C.P.K., appellant.
Megan A.E. Malone, Carlisle, for C.C., appellant.
Ruby D. Weeks and Lindsay D. Baird, Carlisle, for Youth Services, appellee.
Jacqueline M. Verney, Carlisle, Guardian Ad Litem.
BEFORE: DEL SOLE, P.J.E., and HUDOCK and McCAFFERY, JJ.
OPINION BY HUDOCK, J.:
¶ 1 In these appeals, C.P.K. (Father) and C.C. (Mother) challenge the order of the trial court changing the goal for their twin daughters, A.K. and L.K., born February 4, 2004, from reunification to adoption. We reverse.
¶ 2 The pertinent facts and procedural history may be summarized as follows: On June 4, 2004, A.K. and L.K., who were both born premature, were placed on an emergency basis with the Cumberland County Children and Youth Services (the Agency) because of suspected physical abuse. Over the months that followed, several hearings were conducted before the dependency master. On January 12, 2005, the trial court approved the master's report and adopted his recommendations that: 1) the children were abused; 2) they were dependent; 3) Father perpetrated the abuse; 4) Mother was responsible for the abuse by omissions; and 5) aggravated circumstances existed as to both parents.
¶ 3 Both Mother and Father appealed the trial court's dependency adjudication. In its Pa.R.A.P. 1925(a) opinion, the trial court summarized the facts leading to the adjudication as follows:
A.K. and L.K. were placed on an emergency basis because of suspected physical abuse. Pictures taken of the babies on that date showed that each child had extensive bruising on her face and body as well as dried blood under her fingernails and toenails.
Skeletal surveys were performed on each child at the Hershey Medical Center. A.K.'s survey showed that she had sustained 18 rib fractures and 12 fractures of her arms and legs. In addition, she had a possible skull fracture. Her sister L.K. had sustained 17 rib fractures. All of the fractures on each child were in various stages of healing, indicating that they occurred at different time[s].
Dr. Danielle Boal interpreted the skeletal survey. She is board certified in radiology and pediatrics. It was her opinion that the majority of the fractures could not have been caused accidentally. She further opined that they were caused by various intentional actions, i.e., shaking the children, as well as bending and jerking their extremities.
Other physicians testified regarding the non fracture [sic] injuries, including the blood under the fingernails and toenails, as well as the extensive bruising. They concluded that the majority, if not all, of those injuries had been intentionally caused.
See Trial Court Opinion, 3/2/06, at 2 (footnotes omitted). This Court affirmed the trial court's dependency adjudications in an unpublished memorandum. In re A.K. and L.K., 894 A.2d 828 (Pa.Super.2005).
¶ 4 Both parents were eventually convicted of child endangerment charges in connection with these injuries. Mother received an aggregate term of four to twelve months of incarceration to be served in the Cumberland County Prison. Father was sentenced to serve an aggregate term of three to ten years of imprisonment in a state correctional institution. On November *599 30, 2005, a permanency hearing was held and, at its conclusion, the goal with regard to each child was changed from reunification to adoption. At this hearing, Father continued to deny that he intentionally harmed the girls. According to Father, he admitted causing their injuries, but stated that he had fallen while holding them or that he played a little too "rough" with them. Mother maintained that she believed Father's explanation for the injuries, although, in hindsight, she should have taken the girls for treatment. This appeal followed. Both the parents and the trial court have complied with Pa.R.A.P. 1925.
¶ 5 In their appeals, both Mother and Father similarly claim that the trial court abused its discretion and erred as a matter of law in changing the goal for their children from reunification to adoption when they satisfactorily completed all or a majority of their permanency plans and without fully considering the bond that they have established with their children.
¶ 6 As this Court has recently summarized:
[a]n order granting a goal change pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, is final and appealable. Our standard of review in such cases is abuse of discretion. When reviewing such a decision we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests and not those of his or her parents.
At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.
These statutory mandates clearly place the trial court's focus on the best interests of the child.
In re C.V., 882 A.2d 481, 484 (Pa.Super.2005). In addition:
Although bound by the facts [as found by the trial court and supported by the record], we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.
In re C.M., 882 A.2d 507, 513 (Pa.Super.2005).
¶ 7 Section 6351(f) of the Juvenile Act, provides, in pertinent part:
(f) Matters to be determined at permanency hearing.At each permanency hearing, a court shall determine all of the following:
(1) The continuing necessity for and appropriateness of the placement.

*600 (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
(4) The appropriateness and feasibility of the current placement goal for the child.
(5) The likely date by which the placement goal for the child might be achieved.
42 Pa.C.S.A. § 6351(f). In support of its decision, the trial court in the present case reasoned:
While the parents were cooperating with the agency, and had achieved most, if not all, of the goals of their respective permanency plans, there had been virtually no progress towards alleviating the circumstances which necessitated the original placement. Despite having been convicted and sentenced, neither parent stood willing to accept responsibility for his or her actions. Notwithstanding overwhelming medical evidence that the multiple injuries to these children were intentionally caused, [Father] remained adamant that they were caused accidentally, and [Mother] still believed him.
As long as they remain in denial, neither parent can properly address the issues that led to the abuse of these children. Until those underlying issues are addressed, it will not be safe for the children to return home. [We are satisfied that Father is still a threat to abuse these children and that Mother is still a threat to allow it to happen.] Since the children had been in placement only 4 days shy of 18 months, and since there was no foreseeable date when the goal of "return home" might be achieved, we felt that a change of goal to adoption was appropriate.
Trial Court Opinion, 3/2/06, at 3-4 (citation omitted).
¶ 8 Contrary to the above comments, our careful review of the record does not support the trial court's conclusion that progress toward "alleviating the circumstances which necessitated the original placement" has not been made. Both parents accepted responsibility for their actions or inactions by pleading guilty to the child endangerment charges. While Father maintained that he did not intentionally harm his children and the court chose to disbelieve him, we note that Father has been sent to prison for three to ten years. He does not pose, therefore, a continuing threat to them. As noted above, Mother testified that, although she believed Father's explanations at the time of the injuries, in hindsight, she should have taken the girls to the hospital for treatment. Additionally, Mother testified that, if the children were returned to her, she would comply with any conditions that the Agency would require, even ceasing contact with Father if need be.
¶ 9 In addition, the trial court was also to consider Father's petition to place the children with the paternal grandparents at the time of the November 30, 2005, hearing. Paternal grandmother testified that, if the girls were to be placed with her and her husband, they would follow the dictates of the Agency before either Mother or Father would be able to see them. The trial court did not address this petition in the order at issue. While we could assume it was denied given the goal change ordered, we note that the "continued threat to the children" that the court relies on to support the goal change does not apply to the paternal grandparents.
*601 ¶ 10 Because we conclude that the trial court erred in assigning the parent's failure to admit that they intentionally abused their children determinative weight, we reverse the order of the trial court and reinstate the goal of reunification. As this Court has stated, "progress toward alleviating the circumstances which necessitated the original placement is but one determination the trial court must make under Section 6351(f)." In re B.S., 861 A.2d 974, 978 (Pa.Super.2004) (footnote omitted). As to the other factors pertinent to a permanency review, the trial court found that Mother was successful in meeting the requirements of her permanency plan. See id. at 977 n. 4 (recognizing that adoption should not be an option for goal change when the parent has complied with permanency plan). Moreover, those who observed Mother's interaction with her children testified at previous hearings that her parenting skills were completely appropriate and that a parental bond was evident. See e.g., N.T., 11/04/04, at 26. Finally, it is undisputed that Mother has been released from prison and has a support system in place to assist her in raising her children. N.T., 11/30/05, at 63-64. Thus, the record supports the conclusion that the Agency should continue efforts to reunite her with them.[1]
¶ 11 Order reversed. Case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.
NOTES
[1] Given this determination, we will not consider Mother and Father's claim that the trial court failed to consider the bonds they have established with their children.