J-S30017-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.K.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.P., MOTHER | |
| | No. 2295 MDA 2013 |

Appeal from the Order Entered December 10, 2013
In the Court of Common Pleas of Centre County
Juvenile Division at No(s): CP-14-DP-2-2011

| IN THE INTEREST OF: E.J.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.P., MOTHER | |
| | No. 2296 MDA 2013 |

Appeal from the Order Entered December 10, 2013
In the Court of Common Pleas of Centre County
Juvenile Division at No(s): CP-14-DP-3-2011

| IN THE INTEREST OF: T.M.P., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: C.P., MOTHER | |
| | No. 2297 MDA 2013 |

Appeal from the Order Entered November 25, 2013
In the Court of Common Pleas of Centre County
Juvenile Division at No(s): CP-14-DP-4-2011

BEFORE: BENDER, P.J.E., MUNDY, J., and JENKINS, J.

MEMORANDUM BY MUNDY, J.:                    **FILED AUGUST 22, 2014**

Appellant, C.P. (Mother), appeals from the November 25 and December 10, 2013 orders terminating the dependency of her biological sons, S.K.P., T.M.P., and E.J.P., and transferring their legal and physical custody to Foster Mother, K.P., as their subsidized permanent legal custodian (SPLC). After careful review, we affirm.

We summarized the relevant factual and procedural history of this case within a prior memorandum filed on June 6, 2014. *See In re S.K.P.*, --- A.3d ---, 2295 MDA 2013, (Pa. Super. 2014) (unpublished memorandum at 2-10). Our June 6, 2014 memorandum granted Mother relief on her first issue raised on appeal, *i.e.*, "[d]id the trial court err by failing to make the findings required by statute to support the appointment of a permanent legal custodian?" Mother's Brief at 4; *see also In re S.K.P.*, *supra* at 20. Specifically, we concluded that the trial court's analysis within its Pennsylvania Rule of Appellate Procedure 1925(a) opinion did not sufficiently address the factors set forth in Section 6351(f) of the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6375, concerning matters to be determined at permanency hearings. *In re S.K.P.*, *supra*. Therefore, we remanded this matter to the trial court and directed it to file a supplemental Rule 1925(a) opinion in accordance with Section 6351(f). *Id.* The trial court issued its supplemental Rule 1925(a) opinion on July 3, 2014. The trial court's

supplemental opinion complied with our prior memorandum and addressed the matters outlined in Section 6351(f). We now proceed to address Mother's remaining errors complained of on appeal.

On appeal, Mother presents the following issues for our review.

[I.] Has [Mother] been unconstitutionally deprived of her right to make decisions concerning the care, custody, and control of her children?

[II.] Does the limitation of [Mother]'s visitation with her sons to three hours per month of tightly regulated contact violate [Mother]'s constitutional right to access to her children?

Mother's Brief at 4.

We review an order granting SPLC for an abuse of discretion.[1] *In re K.J.*, 27 A.3d 236, 241 (Pa. Super. 2011). "When reviewing such a decision,

_____

[1] We have previously summarized the Commonwealth's SPLC program as follows.

In 2001, Pennsylvania created a subsidy program, SPLC, which provides financial support for families willing to become permanent legal custodians pursuant to [S]ection 6351(f.1)(3). SPLC transfers permanent legal custody to the dependent child's legal custodian without requiring the termination of parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the dependent child's natural parents. To be eligible for SPLC, the legal custodian must meet all of the requirements for foster parenthood, submit to an annual eligibility evaluation, and have the ability to provide for the child without court supervision.

*In re H.V.*, 37 A.3d 588, 589 n.1 (Pa. Super. 2012) (brackets omitted), citing *In re B.S.*, 861 A.2d 974, 977 (Pa. Super. 2004).

we are bound by the facts as found by the trial court unless they are not supported in the record[,]" as "the [trial] court is in the best position to observe and rule on the credibility of the parties and witnesses." ***Id.***, *citing **In re A.K.**,* 906 A.2d 596, 599 (Pa. Super. 2006). Although bound by the trial court's factual findings, "we are not bound by [its] inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination… and must order whatever right and justice dictate." ***Id.*** As such, "[o]ur scope of review… is of the broadest possible nature[,]" and we have the "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." ***Id.***

At first blush, Mother's initial claim appears to raise a constitutional challenge to the trial court's underlying SPLC orders. Mother's Brief at 20. Within her question presented on appeal, Mother asserts, "[she] has been unconstitutionally deprived of her right to make decisions concerning the care, custody, and control of her children." ***Id.*** Yet, the argument Mother develops within her appellate brief is one of sufficiency. ***Id.*** at 20-21. Specifically, Mother asserts Centre County Children and Youth Services (CYS) failed to present clear and convincing evidence to support the SPLC orders because the bulk of its testimony consisted of inadmissible hearsay. ***Id.***

This Court recently articulated the differences between the evidentiary burdens of proof applicable in SPLC and termination of parental rights matters. *In re S.H.*, 71 A.3d 973, 979-980 (Pa. Super. 2013), *appeal denied*, 80 A.3d 778 (Pa. 2013). In *S.H.*, we addressed whether an order for SPLC of a child prohibited the child's parent from later seeking primary custody. *Id.* at 975. Concluding the legislature could not have intended for such a prohibition, we reasoned as follows.

> A trial court must utilize the highest civil standard of proof, "clear and convincing evidence," when addressing a petition to terminate parental rights. When a trial court considers and grants a [SPLC] order, it does not engage in this heightened review process. Upon filing a SPLC petition, [CYS] is required merely to prove that [neither] reunification [n]or adoption [are] not best suited to the child's safety, protection and physical, mental and moral welfare. Clearly, the procedural and substantive safeguards utilized to protect the rights of parents in termination cases are not applicable in [S]PLC cases.

*Id.* at 979-980 (citation and footnote omitted).

In the case *sub judice*, the trial court addressed CYS's petitions for SPLC, not petitions to terminate Mother's parental rights. Accordingly, the trial court's findings did not have to be supported by clear and convincing evidence. *See id.* Rather, CYS only needed to establish that neither reunification with Mother nor adoption were "best suited to [S.K.P., T.M.P., and E.J.P.]'s safety, protection and physical, mental and moral welfare." *Id.* at 980.

Herein, the trial court found CYS presented sufficient evidence to establish that SPLC was in S.K.P., T.M.P., and E.J.P.'s best interests. Trial Court Opinion, 7/3/14, at 10. Specifically, the trial court found that "[t]he children's lives have continued to progress since they have been in placement. [T]he children made their own strides, mentally, emotionally, educationally, and socially, and have developed a very close relationship with [K.P.]" *Id.* at 11. The trial court acknowledged that "Mother has recently made great personal strides[]" yet "significant progress did not occur until after th[e trial c]ourt ended reunification services and changed the children's goals from reunification to permanent foster placement[,]" *i.e.*, when "the children had already been in placement for over a year and a half." *Id.* at 10. Additionally, the trial court noted that "[Mother] has historically complied only minimally with the children's placement plans[.]" *Id.* As the children have been "happy and thriving in their current environment[ with K.P.] … for almost three years[]" and "do not wish to return home[,]" the trial court concluded SPLC would best fulfill their needs for permanency and stability. *Id.* at 11. The trial court also noted that SPLC would encourage S.K.P, T.M.P., and E.J.P. to visit with Mother and their twin sisters. *Id.*

Upon review, we conclude the trial court did not abuse its discretion when it entered the contested SPLC orders because sufficient evidence exists to support such orders. The trial court held a two-day hearing on CYS's

SPLC petitions, at which time the following individuals testified: the director of the family-based mental health program, Keystone Human Services; a CYS caseworker; a graduate assistant and staff therapist at the Penn State Psychological Clinic; Mother; and S.K.P., T.M.P., and E.J.P.'s twin sisters. Additionally, S.K.P., T.M.P., and E.J.P.'s guardian *ad litem* (GAL) spoke to the trial court. N.T., 11/22/13, at 58-61. As the trial court based its SPLC orders on this testimony and the record supports its factual findings, we conclude no abuse of discretion occurred. **See K.P.**, **supra**.

Moreover, we note the alleged inadmissible hearsay testimony referenced by Mother was presented by CYS during the family's initial dependency proceedings in 2011. Mother's Brief at 21, *citing* N.T., 1/14/11 and 1/21/11. We conclude Mother's argument regarding the admission of that testimony and/or the initial dependency finding of the trial court to be waived since she failed to appeal that initial dependency decision to this Court. **See generally In re J.J.**, 69 A.3d 724 (Pa. Super. 2013) (addressing father's appeal of orders adjudicating his four children dependent); **In re F.B.**, 927 A.2d 268, 272 (Pa. Super. 2007) (concluding that the dismissal of a dependency petition is a final, appealable order pursuant to Pa.R.A.P. 341(b)), *appeal denied*, 954 A.2d 577 (Pa. 2008). Accordingly, Mother's first issue fails.

Within Mother's second issue, she asserts that the trial court's imposed visitation schedule violates her constitutionally protected right to access her

children. Mother's Brief at 22, *citing* **In re C.J.**, 729 A.2d 89, 94 (Pa. Super. 1999). Specifically, Mother argues that the trial court may not limit her visitation to three hours a month unless these visits pose a grave threat to her children and that CYS failed to present evidence establishing such a threat. **Id.**

We agree with Mother that "parental visitation is usually not denied or limited unless visitation with the parent poses a grave threat to the child[]" due to "the constitutionally protected liberty interests parents have to visitation[.]" **See C.J.**, **supra** at 94-95, *citing* **Santosky v. Kramer**, 455 U.S. 745 (1982), **Green v. Sneeringer**, 635 A.2d 1074 (Pa. Super. 1993). "It has long been the law in this Commonwealth that only when the evidence clearly shows that parents are unfit to associate with their children should they be denied the right to see them." **Id.** at 95, *quoting* **Commonwealth ex rel. Turner v. Strange**, 115 A.2d 885, 886 (Pa. Super. 1955) (brackets and internal quotation marks omitted).

> [Yet, t]he standard against which visitation is measured … depends upon the goal mandated in the family service plan. Where … reunification [] remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat. If … the goal is no longer reunification of the family, then visitation may be limited or denied if it is in the best interests of the child or children.

**In re C.B.**, 861 A.2d 287, 294 (Pa. Super. 2004) (citations omitted), *appeal denied*, 871 A.2d 187 (Pa. 2005). "The best interests standard, in this

context, is less protective of parents' visitation rights than the grave threat standard." **C.J.**, **supra** (internal quotation marks omitted).

Contrary to Mother's assertion, the best interests standard applied to the underlying matter because, at the time of the SPLC hearing, S.K.P., T.M.P., and E.J.P.'s placement goals were no longer reunification. **See id.** In fact, the trial court changed S.K.P., T.M.P., and E.J.P.'s placement goals from reunification to planned permanent living arrangement/long-term foster care on March 27, 2012. Trial Court Permanency Review Orders, 3/27/12. As the children's permanency goals were no longer reunification, the trial court did not need to apply the grave interest standard when it limited Mother's visitation. **See C.B.**, **supra**. Rather, the trial court appropriately considered the best interests of the children when awarding Mother three hours of visits per month. **See id.**; Trial Court Opinion, 1/14/14, at 6 (concluding S.K.P., T.M.P., and E.J.P.'s best interests are met by visiting Mother three times a month). Thus, Mother's second issue also lacks merit.

Based upon the foregoing, we conclude Mother's issues are devoid of merit. Therefore, we affirm the trial court's November 25 and December 10, 2013 orders terminating the dependency of her biological sons, S.K.P., T.M.P., and E.J.P., and transferring their legal and physical custody to a SPLC.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/22/2014</u>