J-S20016-16

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

IN THE INTEREST OF: J.M., A MINOR : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
APPEAL OF: M.M., FATHER, : No. 1326 WDA 2015
:
:

Appeal from the Order Entered July 29, 2015,
in the Court of Common Pleas of Westmoreland County
Civil Division at No. CP-65-DP-0000123-2014

BEFORE: PANELLA, OLSON, and PLATT,* JJ.

MEMORANDUM BY OLSON, J.: **FILED APRIL 15, 2016**

M.M. ("Father") appeals from the order entered on July 29, 2015, granting the Westmoreland County Children's Bureau's ("WCCB's") motion to prohibit visitation between Father and his son, J.M. ("Child"), born in June 2014. We affirm.

The factual background and procedural history of this case are as follows. Father is involuntarily committed, on a continuing basis, to Torrance State Hospital ("TSH") for his sexual disorders. Father sexually abused a four-year-old child on 30-40 occasions. Child is the product of Father's sexual relationship with S.M. ("Mother"), who was a patient at TSH. On September 30, 2014, the trial court adjudicated Child dependent pursuant to 42 Pa.C.S.A. § 6302(1), and ordered Child removed from Mother's home, with reunification as a permanency goal. Child was placed in

* Retired Senior Judge assigned to the Superior Court

kinship foster care with his maternal grandparents. Subsequently, Father expressed a desire to visit with Child. On April 9, 2015, WCCB filed a motion to prohibit visitation between Father and Child.

On June 1, 2015, a hearing was held on WCCB's motion. At the hearing, WCCB presented the testimony of Dr. Danielle Adamsky, the director of psychological services at TSH. Prior to her promotion to director of psychological services, Dr. Adamsky was Father's therapist beginning in 2008. Dr. Adamsky explained that Father admitted to sexual arousal to certain children, and he refers to his desire to violate rules and engage in negative behaviors as his "beast." According to Dr. Adamsky, Father has stated that the beast often wins out in his decision-making. On July 29, 2015, the trial court granted WCCB's motion to prohibit visitation between Father and Child. This timely appeal followed.[1]

Father presents one issue for our review:

> Did the trial court abuse its discretion in finding there was clear and convincing evidence of a grave threat to [C]hild sufficient to deny [Father] supervised visitation with [Child]?

Father's Brief at 4.

Our Supreme Court set forth our standard of review for dependency cases as follows:

---

[1] On August 26, 2015, Father filed a concise statement of errors complained of on appeal contemporaneously with his notice of appeal. *See* Pa.R.A.P. 1925(a)(2)(i). Appellant's lone issue on appeal was included in his concise statement of errors complained of on appeal.

J-S20016-16

>     [T]he standard of review in dependency cases requires an
>     appellate court to accept the findings of fact and credibility
>     determinations of the trial court if they are supported by the
>     record, but does not require the appellate court to accept the
>     lower court's inferences or conclusions of law. Accordingly, we
>     review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010).

"[T]he standard against which visitation is measured also depends upon the goal mandated in the family service plan. Where, as here, reunification still remains the goal of the family service plan, visitation will not be denied or reduced unless it poses a grave threat." *In re L.V.*, 127 A.3d 831, 839 (Pa. Super. 2015). This Court explained that:

>     The grave threat standard is met when the evidence clearly
>     shows that the parent is unfit to associate with his or her
>     children; the parent can then be denied the right to see them.
>     This standard is satisfied when the parent demonstrates a severe
>     mental or moral deficiency that constitutes a grave threat to the
>     child.

*In re C.B.*, 861 A.2d 287, 293-294 (Pa. Super. 2004), *appeal denied*, 871 A.2d 187 (Pa. 2005) (internal quotation marks and citations omitted). WCCB bears the burden of proving that Father poses a grave threat by clear and convincing evidence. *In re Mary Kathryn T.*, 629 A.2d 988, 995 (Pa. Super. 1993), *appeal denied*, 639 A.2d 32 (Pa. 1994).

Father argues that there was no clear and convincing evidence of a grave threat of harm to Child. He states that Dr. Adamsky testified that there was no risk of physical harm to Child if visitations were supervised. Additionally, Father states that Dr. Adamsky was unable to give an opinion

- 3 -

regarding whether there might be any emotional or psychological harm to Child. Accordingly, Father argues that since there is no evidence of a risk of any harm, much less severe harm, to Child, he is entitled to have appropriately supervised visitation with Child. Father states that his offenses with a child occurred over a decade ago, while Father was still a minor. Father claims that he loves Child and wishes to have a relationship with him. The guardian *ad litem* ("GAL") supports Father's interest in maintaining contact with Child. GAL states that, because Child is only 21 months old, he supports supervised visits at TSH, as it is unlikely that such visits would cause Child psychological harm. GAL posits that, if the visits would become a grave threat to Child, the trial court could immediately terminate Father's visitation.

We agree with the trial court that Father poses a grave threat to Child. Although supervision of visits between Father and Child may decrease the risk of physical harm to Child, the trial court found that there is a high risk of emotional or psychological harm. This finding is supported by the record. In the past, Father sexually abused a four-year-old child approximately 30-40 times. Dr. Adamsky testified that Father had a moderate to high risk of sexually abusing a young child in the future. Father admitted that he attempted to groom other young children in order to sexually abuse them. Thus, there was a very high risk that Father would attempt to groom Child so that he could sexually abuse him in the future. Even if Father does not

intend to cause this harm, his "beast" may take over and cause the harm during his visits with Child. Furthermore, as the trial court stated, "Father's concomitant lack of investment into treatment of his sexual urges towards children, despite seven years of his psychiatric commitment, only enhances this possibility." Trial Court Opinion, 7/29/15, at 4.

Father attempts to distinguish *C.B.* and *Green v. Sneeringer*, 635 A.2d 1074 (Pa. Super. 1993), in which this Court held that the grave threats posed by the fathers in those cases justified denial of visitation, from the case *sub judice*. Assuming *arguendo* that *C.B.* and *Green* are distinguishable from the case at bar, however, this does not indicate that Father is entitled to visitation with Child. Father cites to no case in support of his argument that he does not pose a grave threat to Child. As noted above, permitting Father to visit with Child poses a grave threat to Child's psychological and emotional welfare. There would be no way for the trial court to "unring the bell" if such harm occurred. Thus, GAL's contention that supervised visitation would eliminate the risk of any harm to Child is without merit.

In sum, Father's previous sexual abuse of a minor, and his continuing ideations involving minors, demonstrates "a severe mental or moral deficiency that constitutes a grave threat to Child." *L.V.*, 127 A.3d at 840. Accordingly, we conclude that the trial court did not abuse its discretion in granting WCCB's motion to prohibit visitation between Father and Child.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2016