J-S56001-15
J-S56002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: T.M., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: G.L.M., JR., FATHER, | No. 961 MDA 2015 |

Appeal from the Order Entered April 28, 2015,
in the Court of Common Pleas of Franklin County, Juvenile
Division, at No(s): CP-28-DP-0000069-2013

| | |
|---|---|
| IN RE: T.R.M., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: G.L.M., JR., FATHER, | No. 963 MDA 2015 |

Appeal from the Decree Entered April 27, 2015,
in the Court of Common Pleas of Franklin County, Juvenile
Division, at No(s): 2 Adopt 2015

BEFORE:  SHOGAN, JENKINS, and PLATT*, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED OCTOBER 05, 2015**

In these related matters, G.L.M., Jr. ("Father") appeals from the

April 27, 2015 decree and the April 28, 2015 order[1] that, respectively,

---

*  Retired Senior Judge specially assigned to the Superior Court.

[1]  Pennsylvania Rule of Appellate Procedure 108(b) designates the date of entry of an order as "the day on which the clerk makes the notation in the docket that **notice** of entry of the order has been given as required by Pa.R.C.P. 236(b)."  Pa.R.A.P. 108(b) (emphasis added).  **See also In re L.M.**, 923 A.2d 505, 508 (Pa. Super. 2007) (quoting **Frazier v. City of Philadelphia**, 557 Pa. 618, 621-622, 735 A.2d 113, 115 (1999)), for the proposition that the appeal period has not started to run where there is no indication on the docket that notice pursuant to Pa.R.C.P. Rule 236(b) has been given.  The trial court's docket indicates that the permanency review

granted the petitions filed by the Franklin County Children and Youth Service

("CYS" or the "Agency") to terminate Father's parental rights to his son,

T.R.M. ("Child"), and to change Child's permanency goal to adoption. We

affirm the termination decree and the goal change order.

In its opinion to this Court, the trial court summarized the factual

background and procedural history of this case as follows:

> [Child] was born [in August of 2013], in Chambersburg, Pennsylvania. A.R.M. ("Mother") is the natural mother of [Child,] and G.L.M. ("Father") is his natural father. [Child] came into the care of [the Agency] pursuant to an Emergency Verbal Order on September 11, 2013. The placement was a result of ongoing concerns the Agency had regarding [Child's] weight. [Child] has remained in the custody of the Agency in foster care since the September 11, 2013 placement. On February 11, 2015, the Agency filed a Petition for the Involuntary Termination of Parental Rights ("Petition") seeking the termination of the parental rights of Mother and Father. Concurrently, in the on–going dependency action, the Agency requested that this [c]ourt change the permanency goal to adoption. A three-day evidentiary hearing was held on February 24, 2015, March 13, 2015, and April 13, 2015.

Trial Court Opinion, 6/5/15, at 1.

At the commencement of the February 24, 2015 hearing, Father

requested a continuance because Child's paternal grandmother ("Paternal

Grandmother") had applied to become Child's kinship care placement and

had submitted most of the paperwork. N.T., 2/24/15, at 5. CYS and the

guardian *ad litem* opposed the request for a continuance because the kinship

_____

order dated April 27, 2015 was served on the parties and their counsel on April 28, 2015. We have amended the caption accordingly.

care application process had been ongoing since November of 2013, and the parties had unnecessarily delayed the application process by failing to provide the information CYS requested. *Id.* Counsel for CYS informed the trial court that the kinship care study process would continue, but in the meantime, CYS was seeking to terminate Mother's and Father's parental rights to Child and change Child's placement goal to adoption. *Id.* The trial court denied Father's continuance request "on the basis of a potential kinship home through Father's mother" because "[t]hat process is independent of what's happening here today." *Id.* at 5-6. Thereafter, CYS presented the testimony of Nicole Weller ("Caseworker"), the caseworker for CYS assigned to Child, and Father testified on his own behalf. *Id.* at 6–65, 67–96. At the hearing on March 13, 2015, Mother testified on her own behalf. N.T., 3/13/15, at 4–69. After the record was closed, Mother requested an additional hearing to correct the record. That hearing was held on April 13, 2015, during which Mother clarified her previous testimony. N.T., 4/13/15, at 4–8. Importantly, Father and Mother were incarcerated on September 30, 2014, for theft charges, and they remained incarcerated at the time of the hearings.

As stated above, by decree entered on April 27, 2015, the trial court terminated Mother's and Father's parental rights. In the decree, the trial court made findings of fact based on the testimonial and documentary

evidence it had received. Decree, 4/27/15, at 1–11. The trial court also filed a permanency review order, directing Child to remain in the legal and physical custody of CYS, in foster care placement, with a goal change to adoption. Order, 4/28/15. On May 27, 2015, Father filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On June 25, 2015, this Court entered orders listing the appeals consecutively. Father raises one issue on appeal:

> [Whether t]he trial court erred in not ordering "permanent placement with a fit and willing relative" as Father's other children reside with his mother[?]

Father's Brief, at 4.

Initially, we note that Father does not challenge the sufficiency of the evidence supporting the termination of his parental rights pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a) and (b).[2] Rather, Father focuses his challenge to the decree and the goal change on the trial court's refusal to

---

[2] Had Father raised such a challenge, we would conclude that the trial court appropriately considered all of the factors to be assessed under 23 Pa.C.S. § 2511(a)(2), (5), (8), and (b), and that its analysis is consistent with our Supreme Court's decisions in *In re Adoption of S.P.,* 47 A.3d 817 (Pa. 2012) (setting forth the standards and scope of review applied to the involuntary termination of the parental rights pursuant to 23 Pa.C.S. § 2511(a)), and *In re: T.S.M.*, 71 A.3d 251 (Pa. 2013) (discussing the analysis required pursuant to 23 Pa.C.S. § 2511(b)). Decree, 4/27/16, at 11–19. Further, we would hold that the trial court's conclusions are supported by competent evidence in the record. As such, we would find no abuse of the trial court's discretion in terminating Father's parental rights. *Adoption of S.P.*, 47 A.3d at 826–827.

order Child's "permanent placement with a fit and willing relative," pursuant to 42 Pa.C.S. § 6351(f.1)(4), namely, Parental Grandmother.

As discussed below, the term "fit and willing relative" appears in the Juvenile Code, 42 Pa.C.S. § 6351(f.1)(4). Because placement with a fit and willing relative is one of the enumerated considerations in determining permanency, Father's assertion of the argument in the context of the involuntary termination of his parental rights is misplaced. The Adoption Act does not require a trial court presented with an involuntary termination of parental rights petition to consider placement of a dependent child with a fit and willing relative. 23 Pa.C.S. § 2511(a) and (b). Thus, we limit our review of Father's argument to the trial court's goal change order.

> Our standard of review of an order granting permanent legal custody is abuse of discretion.
>
> When reviewing such a decision[,] we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents. At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

*In re K.J.*, 27 A.3d 236, 241 (Pa. Super. 2011) (quoting *In re A.K.*, 906

A.2d 596, 599 (Pa. Super. 2006) (citations and brackets omitted)).

> Once the court makes these findings, it must determine whether reunification, adoption, or placing the child with a legal guardian is best suited to the child's safety, protection, and physical, mental and moral welfare. *In re B.S.,* 861 A.2d 974, 976–[9]77 (Pa.Super.2004). If the court decides that neither reunification, adoption, or [sic] placement with a legal guardian is appropriate, the court may place the child with a fit and willing relative. 42 Pa.C.S.A. § 6351(F.1)(4); *see also In re B.S.,* 861 A.2d at 977.

*In re K.J.*, 27 A.3d at 242.

> These statutory mandates clearly place the trial court's focus on the best interests of the child.
>
> In addition[, a]lthough bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.

*Id.* at 241 (Pa. Super. 2011) (quoting *In re A.K.*, 906 A.2d at 599 (citations

and brackets omitted)).

> We further reiterate:
>
> In a change of goal proceeding, the best interests of the child, and not the interests of the parent, must guide the trial court, and the parent's rights are secondary. *In re A.K.*, 936 A.2d 528, 532–533 (Pa. Super. 2007). The burden is on the Agency

to prove the change in goal would be in the child's best interests. *In the Interest of M.B.*, 674 A.2d 702, 704 (Pa. 1996).

*In re M.T.*, 101 A.3d 1163, 1173 (Pa. Super. 2014).

Father argues that Paternal Grandmother qualifies as a fit and willing relative pursuant to section 6351 (f.1)(4) of the Juvenile Code. That section provides as follows:

> Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following: . . . (4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S. § 6351 (f.1)(4). Father asserts that Paternal Grandparents are fit, as evidenced by the fact that they care for Child's four siblings.[3] Father's Brief at 9. In support of his position, Father cites Caseworker's testimony that CYS would have concern for the three older siblings without the strong support of Paternal Grandmother. *Id.*; N.T., 2/24/15, at 62–63. Father further contends that Paternal Grandparents are willing, as evidenced by the fact that Paternal Grandmother has applied for kinship care. Father's Brief at 9; N.T., 2/24/15, at 5. According to Father, the advantages of placing Child with Paternal Grandparents include not having to terminate the

---

[3] Child's siblings are D.M., age 11; K.M., age 7; A.M., age 4, and J.M., a newborn. N.T., 2/24/15, at 44. Trial Court Decree, 4/27/15, at 7, ¶ oo. When Mother gave birth to J.M., she was placed on medical furlough from prison from December 31, 2014, to January 29, 2015. *Id.* at ¶ jjj.

parental rights of the parents; fostering a bond between Child and his biological family, including Child's four siblings; and preserving Child's cultural identity and heritage. Father's Brief at 9.

The trial court explained why it denied placement with Paternal Grandparents as follows:

> Preliminar[il]y, this [c]ourt would note that it was informed by Father's counsel at the hearing that Paternal Grandmother was available as a potential resource for [Child]. It was also clear that the Agency was aware that Paternal Grandmother was a potential resource for [Child] and that his siblings currently resided there. Thus, this [c]ourt did consider this fact when evaluating whether or not to terminate Father's parental rights and make a goal change.
>
> Despite implications otherwise, there is no language in 23 Pa. C.S. § 2511 that even suggests this Court cannot terminate an individual's parental rights so long as a "fit and willing relative" is identified. Similarly, 42 Pa. C.S. § 6351, the statute controlling the disposition of dependent children, also features no such language. Section 6351 does state in subsection (10) that if a sibling is in a different placement this [c]ourt must determine whether reasonable efforts have been made to place the child and his sibling together or if such joint placement is contrary to [the] safety or well-being of the child or sibling. This [c]ourt found that the Agency did take reasonable steps to place [Child] and his siblings together. However, in this case it was clear that removing [Child] from placement with his foster family would be contrary to his well-being. [Child] has been in placement with his foster family for all but roughly one month of his life. Testimony provided at the hearing illustrated that [Child] has developed a significant and loving bond with his foster family, who he recognizes as family, and to whom he turns for comfort, love, and nurturing.
>
> As Father does not assert that this [c]ourt's decision was not properly supported by statutory authority, we find it would be superfluous to engage in a detailed analysis of each and

every element under 23 Pa. C.S. § 2511 and 42 Pa. C.S. § 6351. Furthermore, the evidence at the hearing overwhelmingly supported termination of Father's parental rights and a change of goal to adoption. Despite the grounds under the statute having been clearly and convincingly proven, the [c]ourt takes no pleasure in the carrying out of its duty in ordering the termination of parental rights and finding the goal of reunification no longer appropriate. Yet, [Child] deserves permanency and he is doing well with his foster parents. Father may love his children, but love alone is not enough when they also need protection, attention and care.

Trial Court Opinion, 6/5/15, at 7–8.

Our review of the record confirms support for the trial court's factual findings. Child has been in placement for all but the initial month of his life. In total, Child had been in placement for seventeen months at the time the Petition for Termination of Parental Rights was filed by the Agency. Decree, 4/27/15, at 13; N.T., 2/24/15, at 37. Father failed to exert himself and maintain a place of importance in Child's life even when Father was not incarcerated. Decree, 4/27/15, at 16; N.T., 2/24/15, at 9, 11–13, 18–33, 39–41, 59–60, 74–81, 84–85, 88–89. Although Paternal Grandparents presented themselves as a placement resource, their application process was not complete at the time of the February 24, 2015 hearing. N.T., 2/24/15, at 5, 35–36. More importantly, as the trial court found:

[Child] is thriving in his foster home and looks to his foster parents for love, care, and nurturing. They are able to comfort and soothe him when he is upset. Most importantly, there appears to be a deep loving and emotional bond between the foster parents and [Child] one that is reciprocated. [Child] has made significant strides in his foster home and his foster parents

desire to make him a part of their family. Testimony at the hearing suggests that if [Child] recognizes any individuals in his life as his parents, it is his foster parents. . . . [Child] deserves permanency now and not an undetermined future. His foster family is willing to provide that.

Decree, 4/27/15, at 18; N.T., 2/24/15, at 38, 40–43.[4]

Exercising our independent judgment in reviewing the trial court's legal conclusion, we are satisfied that the record represents a comprehensive inquiry and that the trial court applied the appropriate legal principles to that record. *In re K.J.*, 27 A.3d at 241. Having considered all of the statutory placement options, the trial court determined that adoption by his foster parents was best suited to Child's safety, protection, and physical, mental, and moral welfare. Moreover, contrary to Father's concern, nothing in the record suggests that the goal change would undermine the fostering of a bond between Child and his biological family, including his four siblings, or the preservation of Child's cultural identity and heritage.

Thus, we discern no abuse of discretion or error of law in the trial court's decision not to place Child with Paternal Grandparents. Accordingly, we affirm the trial court's decree involuntarily terminating Father's parental rights to Child and its order changing Child's permanency goal to adoption.

---

[4] Caseworker testified that the foster parents appropriately address a medical issue involving Child's kidneys, hydronephrosis, for which Child is seen at Hershey Pediatric Urology. N.T., 2/24/15, at 38.

- 10 -

Decree and order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/5/2015