J-S08001-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| IN THE INTEREST OF: S.L.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.L., FATHER | No. 2967 EDA 2018 |

Appeal from the Decree Entered September 11, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-AP-0000039-2018

| IN THE INTEREST OF: S.L.L., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: J.L., FATHER | No. 2969 EDA 2018 |

Appeal from the Decree Entered September 11, 2018
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): CP-51-DP-1000206-2016

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED APRIL 17, 2019**

J.L. (Father) appeals from the September 11, 2018 decrees that granted the petitions filed by the Philadelphia Department of Human Services (DHS) to involuntarily terminate Father's parental rights to S.L.L. (Child) (born in January of 2013) and to change the goal for Child to adoption.[1, 2] After review, we affirm.

---

[*] Former Justice specially assigned to the Superior Court.

[1] These appeals were consolidated *sua sponte* by *per curiam* order of this Court, as all of these matters involve related parties and issues. Order, 1/10/19.

[2] The parental rights of Child's mother, L.W. (Mother), were terminated by separate decree on September 11, 2018. Mother has not filed an appeal.

The trial court provided the following factual and procedural background of this case, stating:

> The family became known to [DHS] on January 10, 2013 when DHS received a substantiated General Protective Services ("GPS") report, which alleged that Mother and Child [tested] positive for cocaine at Child's birth. On May 24, 2016, DHS received a GPS report alleging that Father had custody of [] Child after being removed from Mother's care. The GPS report also alleged that Father used drugs and allegedly sexually assaulted a female relative. On May 26, 2016, DHS attempted to visit [F]ather's home but could not locate Father and Child. On May 31, 2016, DHS located Father and determined that he was homeless and that [] Child stayed nights with Father's maternal grandmother. On June 10, 2016, an Adjudicatory Hearing was held and Child was adjudicated dependent. On August 4, 2016, Dr. Kai Syversten, PhD[,] conducted a psychological evaluation of Father. Father was lethargic and nonresponsive during this evaluation. As a result of the evaluation, Dr. Syversten recommended that Father (1) receive outpatient psychotherapy and psychiatric medication to treat depression; (2) Father submit to drug testing; (3) Father obtain housing and (4) that Father comply with DHS recommendations. On September 7, 2016, the Community Umbrella Agency ("CUA") held a Single Case Plan ("SCP") meeting. The goals identified for Father were to (1) comply with visits; (2) to complete three random drug screens; (3) to make visits with the Child and (4) receive mental health treatment. The underlying Petition to Terminate [F]ather's Parental Rights was filed on January 16, 2018 due to Father['s] failing to meet his SCP objectives. On September 11, 2018, the court ruled to terminate Father's parental rights to Child pursuant to 23 Pa.C.S.[] § 2511(a)(1)(2)(5)(8) and found that termination of Father's parental rights was in the best interest of Child pursuant to 23 Pa.C.S.[] § 2511(b). Father filed the instant Notice of Appeal on October 11, 2018.

Trial Court Opinion (TCO), 10/31/18, at 2-3 (citations to record omitted).

In its opinion, the court noted that although Father did not attend the September 11, 2018 hearing that resulted in both the termination of his

parental rights and the goal change for Child to adoption, he was represented by counsel, who stipulated to the facts set forth in the termination/goal change petitions. The court further identified Emily Cherniack, Esquire, as the Child Advocate and Rebecca Mainor, Esquire, as the Guardian *Ad Litem* (GAL). The court also set out a synopsis of the testimony provided by Tyrone King, the DHS Representative, stating:

> At the termination hearing, Mr. Tyrone King, the assigned DHS Representative, testified that Father had failed to achieve his SCP objectives[,] which included receiving mental health treatment and visits with [] Child. Mr. King testified that Child was well bonded to her pre-adoptive foster parent and that Child had spent a significant period of time with her foster parent. Mr. King testified that he had observed interactions between the Foster Parent and Child, which indicated a parent/child bond. Mr. King testified that the termination of Father's parental rights would not cause irreparable harm to Child and that termination of [] Father's parental rights was in [] Child's best interest. At the hearing, Rebecca Mainor, Esquire, the [GAL], proffered that [] Child wanted to remain with her foster parent and that she did not believe that there would be any conflict between [] Child's legal interest and adoption. Emily Cherniak, Esquire, as Child Advocate, made no indication that [] Child did not want to be adopted. The testimony of Mr. King was deemed credible and accorded great weight. In addition, the Child Advocate and [the GAL] were diligent in their determination that there was no conflict between the legal interest and the best interest of [] Child. Consequently, documents and testimony presented at the Termination of Parental Rights Hearing provided the [c]ourt clear and convincing evidence to terminate Father's parental rights and rule that the termination of these rights would be in the best interest of Child….

*Id.* at 4-5 (citations to record omitted). Based on this record, the court concluded that Father demonstrated an "ongoing inability to provide care for or control of Child resulting in his failure to remedy the conditions that brought

[] Child into care. Specifically, Father failed to satisfy his SCP objectives." *Id.* at 4.

On appeal, Father presents the following issues for our review:

1. Did the [t]rial [c]ourt err in terminating [Father's] parental rights under [23] Pa.C.S.[] [§] 2511(a)(1), (a)(2), (a)(5), and (a)(8)?

2. Did the [t]rial [c]ourt err in finding that termination of Father's parental rights best served [] [C]hild's developmental, physical and emotional needs under [23] Pa.C.S.[] [§] 2511(b)?

3. Did the [t]rial [c]ourt err in changing [] [C]hild's goal to adoption?

Father's brief at vi.

We begin by setting forth the applicable standard of review relating to Father's first and second issues.

When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

- 4 -

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

The trial court is free to believe all, part, or none of the evidence presented

and is likewise free to make all credibility determinations and resolve conflicts

in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If

competent evidence supports the trial court's findings, we will affirm even if

the record could also support the opposite result. *In re Adoption of T.B.B.*,

835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights

is governed by Section 2511 of the Adoption Act, which requires a bifurcated

analysis.

> Our case law has made clear that under Section 2511, the court
> must engage in a bifurcated process prior to terminating parental
> rights. Initially, the focus is on the conduct of the parent. The
> party seeking termination must prove by clear and convincing
> evidence that the parent's conduct satisfies the statutory grounds
> for termination delineated in Section 2511(a). Only if the court
> determines that the parent's conduct warrants termination of his
> or her parental rights does the court engage in the second part of
> the analysis pursuant to Section 2511(b): determination of the
> needs and welfare of the child under the standard of best interests
> of the child. One major aspect of the needs and welfare analysis
> concerns the nature and status of the emotional bond between
> parent and child, with close attention paid to the effect on the child
> of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511,

other citations omitted). The burden is upon the petitioner to prove by clear

and convincing evidence that the asserted grounds for seeking the termination

of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In **In re C.M.S.**, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. **Id.** However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. **In re K.Z.S.**, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. **Id.** at 763.

**In re Adoption of J.M.**, 991 A.2d 321, 324 (Pa. Super. 2010).

In this case, the trial court terminated Father's parental rights pursuant to Section 2511(a)(1), (2), (5), (8) and (b). We need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. **In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

\*\*\*

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity,

abuse, neglect or refusal cannot or will not be remedied by the parent.

\*\*\*

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(2).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

The main thrust of Father's argument centers on his allegation that DHS failed to provide clear and convincing evidence to support the termination of his parental rights, namely, that the "causes of the incapacity, abuse, neglect or refusal [were] not … remedied." Father's brief at 6. Rather, he claims that he completed parenting classes, healthy relationship classes, and a housing workshop. He also asserts that he attended mental health treatment, was employed, visited with Child and that because he had negative drug screens, he did not need any drug or alcohol treatment.

What Father fails to note is that he, through his attorney, stipulated to the facts alleged in the termination/goal change petitions, which together with the testimony of Mr. King was the basis for the trial court's findings. The brief filed by DHS cites two cases that support the trial court's reliance on the stipulation of facts. Specifically, DHS's brief states:

> "A stipulation of facts is binding upon the hearing tribunal as well as the parties to the stipulation. As a general rule, once a stipulation of facts has been effectively entered into, there can be no valid contention or conclusion that facts within the scope of the stipulation are unsupported by substantial evidence. In sum, facts effectively stipulated to are controlling and conclusive." ***Kostecky v. Mattern***, 452 A.2d 100, 104 (Pa. Cmwlth. 1982) (internal citations omitted). "Evidence admitted by stipulation or consent of both parties is fully competent and accorded full weight." ***Jones v. Spidle***, 286 A.2d 366, 367-68 (Pa. 1971) (internal citations omitted).

DHS's brief at 19. We have not found any cases that contradict these statements of the law. Moreover, based on our review of the record, we

conclude that the trial court's decision was supported by competent evidence and Father's arguments to the contrary are without merit.

Next, we address Father's second issue, wherein he argues that the termination of his parental rights was not in Child's best interest as delineated under Section 2511(b). We have discussed the required analysis under Section 2511(b) previously in this memorandum. *See In re Adoption of J.M.*, 991 A.2d at 324. However, Father's sole contention is that because he consistently visited with Child, the trial court erred in terminating his parental rights. This statement is contrary to the court's finding, based on Mr. King's testimony that Father "failed to achieve his SCP objectives which included … visits with [] Child." TCO at 4. Moreover, our review of the record reveals that Father's visits with Child decreased over time from frequent, unsupervised periods to supervised, bi-weekly, line-of-sight and line-of-hearing visits. Furthermore, Mr. King testified that Child would not be irreparably harmed if Father's parental rights were terminated and that Child had a good bond with the pre-adoptive kinship parent. Again, we conclude that based upon the record, Father is not entitled to any relief.

Lastly, we turn to Father's issue concerning the goal change to adoption for Child. Father's brief contains a recitation of the law relating to a goal change and then he simply argues then he has consistently visited Child and was receiving mental health treatment. The transcript of the termination/goal change hearing shows that Child, who was five years old at the time of the

hearing, had been in care approximately 2½ years. N.T., 9/11/18, at 4. Moreover, based upon Mr. King's testimony, Father was "not fully compliant with his [SCP] objectives, including mental health, housing, supervised visitation and remaining out of incarceration[.]" *Id.* at 6. Mr. King also concluded that it would be in Child's best interests to be adopted. *Id.* at 7. Based on the stipulation of facts and this testimony, the court concluded that under the circumstances, it was appropriate to order a goal change to adoption. *Id.*

This Court's standard of review involving a goal change for a dependent child is as follows:

> In cases involving a court's order changing the placement goal … to adoption, our standard of review is abuse of discretion. *In re N.C.*, 909 A.2d 818, 822 (Pa. Super. 2006). To hold that the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." *Id.* (quoting *In re G.P.-R.,* 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." *In re A.K.*, 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. *Id.*

*In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008).

Pursuant to the Juvenile Act, 42 Pa.C.S. § 6351(f), when considering a petition for goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the

- 10 -

extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; and (5) a likely date by which the goal for the child might be achieved. *In re S.B.*, 943 A.2d at 977. The best interests of the child, and not the interests of the parent, must guide the trial court. *Id.* at 978.

Our review of the record in this case and the statutory directives governing a goal change support the conclusion that reunification of Child with Father is not a realistic goal. Father is primarily seeking to have this Court reweigh the evidence in a light more favorable to him. However, it is beyond our purview to disturb the credibility determinations of the trial court when the testimony relied upon is supported in the record. The trial court was free to conclude that Father was unlikely to remedy the issues in the near future; thus, the permanency needs of Child dictate changing her goal to adoption. We are compelled to conclude that the trial court did not err in ordering the change of goal to adoption.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/17/19

- 11 -