J-A20006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.V., MINOR CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 189 EDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002253-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: L.V., MINOR CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 190 EDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000631-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V.-H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.V.-H., MINOR CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 191 EDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0002269-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: L.V.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |

J-A20006-22

|   |   |   |
|---|---|---|
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.V.H., MINOR CHILD | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 192 EDA 2022 |

Appeal from the Order Entered December 15, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000630-2019

BEFORE:   STABILE, J., McCAFFERY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY McCAFFERY, J.:          **FILED OCTOBER 17, 2022**

The guardian *ad litem* (GAL) for L.V., born in August of 2016, and L.V.H., born in January of 2015, (Children) appeals from the trial court's orders, dated December 15, 2021, that denied the GAL's petition to terminate the parental rights of J.H. (Mother) and L.V. (Father) to the Children.[1]  The court also denied the GAL's petition to change the Children's goals to adoption.  After review, we affirm.

In its opinion, the juvenile court indicates that numerous hearings were held during 2020 and 2021 to determine whether the GAL's petition requesting the termination of Mother and Father's parental rights to their two Children should be granted pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (b).  The court's opinion does not discuss whether the goal for the Children should be

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] At various places in the briefs and the record, the GAL is also identified as the Child Advocate.  Likewise, Mother and Father are identified as Parents of the two Children.

changed. Based upon the testimony provided, the court set forth the following in response to the GAL's appeal to this Court:

On October 11, 2016, the Department of Human Services ("DHS") received a Child Protective Services ("CPS") report alleging that two (2) month old Child L.V. . . . was admitted to the Children's Hospital of Philadelphia ("CHOP") on October 10, 2016[,] with multiple fractures. In total[,] twenty-six (26) fractures were eventually discovered. These fractures included a right humorous bucket-handle fracture; a rib fracture; and a left femur bucket handle fracture. Medical staff at CHOP determined that Child L.V.'s injuries were highly indicative of child abuse. These fractures were also in various stages of healing. CHOP admitted Child L.V. to the Trauma Unit where Child L.V. remained for several days. Mother and Father were unable to explain any cause or explanation for Child L.V.'s fractures[.] Mother and Father denied that Child had been dropped or fallen or left in the care of someone other than Mother or Father. Rather, Mother and Father stated that Child had not been left unsupervised. Mother indicated that she noticed Child L.V's shoulder was swelling on October 7, 2016. Father indicated that he had noticed Child L.V.'s leg had swollen on October 10, 2016.

On October 11, 2016, a medical evaluation was completed at CHOP on Child's one year old sister Child L.V.H., who was medically cleared. A Safety Plan was implemented by [DHS] for Child L.V.H. and she began residing with her maternal aunt. On October 13, 2016[,] DHS obtained Orders for Protective Custody for Child L.V. and Child L.V.H. The victim Child L.V. was placed in the home of a maternal cousin. On October 21, 2016, DHS filed a Petition for Dependency and a finding of aggravated circumstances and child abuse against Mother and Father. On April 16, 2018, the Court issued an order adjudicating the Children dependent and further ordered that no efforts be made to preserve the family and reunify the Children with Mother and Father based upon a determination of aggravated circumstances. The Mother appealed this adjudication, which was upheld by the Superior Court. [*See In re L.V.*, 209 A.3d 399 (Pa. Super. 2019).]

Sometime after the adjudication[,] the Children were placed with their Paternal Grandfather ("Grandfather") where they

continue to remain. The Grandfather had relocated to Philadelphia from Puerto Rico to care for the Children. By December 15, 2021, the Grandfather was prepared to return to Puerto Rico with the Children and [DHS] acknowledged that the termination of Mother and Father's parental rights would no longer be in the best interests of the Children. The court ordered that the Grandfather be explored as a resource for permanent legal custody [("PLC")] of the Children. The trial court also ordered that the Children be allowed to return to Puerto Rico with their Grandfather. This Order was by agreement of all parties. The [GAL] filed the underlying Notice of Appeal on January 13, 2022.

Juvenile Ct. Op., 6/2/22, at 3-4 (record citation omitted).

Additionally, the juvenile court's opinion discussed testimony upon which it relied in making its determination that the termination of the parental rights of the Parents was not in the best interests of the Children. The court explained:

On January 10, 2020, Ms. Amanda Mosley, [the Community Umbrella Agency ("CUA")] Representative, testified that there remained safety concerns with reuniting the Children with their [P]arents[,] … that the Children were bonded with their Grandfather[,] and that it would be in their best interests that the Children be adopted and allowed to go to Puerto Rico with their Grandfather.

Following this testimony, on January 25, 2021, Dr. William Russell, Psychiatrist, testified as to the findings from his Parental Capacity Evaluation. He also concluded that there remained safety concerns as to placing the Children back with their [P]arents. He also testified that to stop contact with their [P]arents by termination of parental rights would also cause irreparable harm to both children[,] since [P]arents shared a strong parent/child bond. The trial court gave great weight to this testimony.

On August 11, 2021, Roya Paller, social worker, testified that she and the Children discussed their future placement and that the Children were emphatic that they wanted to stay with their Grandfather[,] who had provided to them a "forever

- 4 -

home[.”] Ms. Paller testified that the Children's Grandfather had provided to them their basic needs and that the Children understood the concept of adoption. Ms. Paller testified that Children had a parental bond with their Grandfather and that to separate the Children from their Grandfather and not allow them to go to Puerto Rico would cause irreparable harm. On September 10, 2021, DHS stated that [it] supported a goal of [PLC] as to the Grandfather.

Ultimately, the [juvenile] court made the determination that the termination of the [P]arents['] parental rights would not be in the best interests of the Children[,] in part because it would potentially sever contact between the Children and their [P]arents. Similarly, to not allow the Children to return to Puerto Rico with their Grandfather would also cause irreparable harm. Under these circumstances, the position of DHS that [PLC] be explored as to the Grandfather was reasonable and just. The denial of the [GAL's] underling [*sic*] petition to terminate the parental rights of the Mother and Father was supported by the evidence. For the aforementioned reasons[,] termination of the parental rights of the [P]arents was not in the [C]hildren's best interests. A strong bond existed between Children and their [P]arents and termination of parental rights would cause irreparable harm.

Juvenile Ct. Op. at 5-7 (record citations omitted).

In the appeal to this Court, the GAL's brief sets forth the following issues

for our review:

A. Should the [juvenile] court have involuntarily terminated parental rights as to Mother and Father under §§ 2511(a)(2), (5), and (8), where termination under these subsections was supported by clear and convincing evidence?

B. Did the [juvenile] court err as a matter of law and abuse its discretion in denying [the GAL's] petition to terminate parental rights as to Mother and Father under § 2511(b) as termination best served the Children's needs and welfare?

C. Did the [juvenile] court err as a matter of law and abuse its discretion in denying [the GAL's] petition for a goal change to adoption, where the goal of adoption was in the best interests

- 5 -

of the Children and had not been ruled out, and there were no petitions for [PLC] before the court?

GAL's brief at 4. However, of note, the GAL's Statement of Matters Complained of Pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure includes the following:

1. The [juvenile] [c]ourt erred as a matter of law and abused its discretion in denying Child Advocate's Petition for a Goal Change, where a goal change to adoption was in the best interests of the Child.

2. The [juvenile] [c]ourt erred as a matter of law and abused its discretion in failing to rule out the goal of adoption[] and ordering [CUA] to proceed with the permanency goal of [PLC], where no petitions for [PLC] had been filed.

3. The [juvenile] [c]ourt erred as a matter of law and abused its discretion by allowing [DHS] to enter into evidence a bonding evaluation that was not submitted by the discovery deadline and had never been entered into evidence during the pendency of the case.

4. The [juvenile] [c]ourt erred as a matter of law and abused its discretion by sustaining an objection to the expert testimony of Roya Paller, forensic social worker, regarding whether severing the relationship between Mother and Child would cause irreparable harm to the Child.

5. Child Advocate reserves the right to amend this Concise Statement of Matters Complained of on Appeal upon receipt and review of the transcript in this matter.

GAL's Pa.R.A.P. 1925(b) Statement.

A comparison of the two lists of issues reveals that the GAL's first issue in her brief was not suggested by any of the issues listed in the Statement of Matters Complained of on Appeal. It is well settled that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal." Pa.R.A.P. 302(a). Moreover, "[i]ssues not included in the Statement and/or

not raised in accordance with the provisions of this paragraph (b)(4) are waived." Pa.R.A.P. 1925(b)(4)(vii). Thus, we are compelled to conclude that the first issue listed in the GAL's brief is waived. This conclusion might explain why the GAL notes in her brief that the juvenile court only discusses the bonding of Children with the Grandfather and/or with the Parents, which is based on Section 2511(b), and provides no discussion directed at Section 2511(a).

To address the GAL's second issue, we set forth our well-settled standard of review involving involuntary termination of parental rights cases:

> The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re [Adoption of] S.P.*, . . . 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* "A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill will." *Id.* The trial court's decision, however, should not be reversed merely because the record would support a different result. *Id.* at 827. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings. *See In re R.J.T.*, . . . 9 A.3d [1179, 1190 (Pa. 2010)].
>
> *In re T.S.M.*, . . . 71 A.3d 251, 267 (Pa. 2013) (original brackets omitted). "[T]he trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re Q.R.D.*, . . . 214 A.3d 233, 239 (Pa. Super. 2019) (citation omitted). "If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re B.J.Z.*, 207 A.3d 914, 921 (Pa. Super. 2019) (citation omitted).

- 7 -

***In re S.C.***, 247 A.3d 1097, 1103 (Pa. Super. 2021).

With regard to Section 2511(b), this Court has explained that:

> Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In ***In re C.M.S.***, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case.

***In re Adoption of J.M.***, 991 A.2d 321, 324 (Pa. Super. 2010) (citations omitted).

Moreover, since the GAL's arguments center on the juvenile court's decision to admit or exclude evidence, we set forth our applicable standard of review:

> When we review a trial court ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party.
>
> An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused.

*Phillips v. Lock*, 86 A.3d 906, 920 (Pa. Super. 2014), *quoting* **Stumpf v. Nye**, 950 A.2d 1032, 1035-36 (Pa. Super. 2008) (citation and quotation marks omitted).

Specifically, the GAL argues that the juvenile court abused its discretion by allowing into evidence DHS's bonding evaluation produced by Dr. Russell in 2019, because it was not submitted during pre-hearing discovery. **See** GAL's Brief at 46-52. However, the GAL was aware of Dr. Russell's report from the time it was issued, in that Dr. Russell was the GAL's own witness. Moreover, the court indicated that the bonding evaluation was a necessary consideration when formulating its decision in this case, which resulted in the maintenance of the bond with Parents as well as the bond with Grandfather. Essentially, the GAL's position as to the admission of Dr. Russell's bonding evaluation appears to rest on the fact that the evaluation did not support her position and that, therefore, the petition to terminate the Parents' parental rights should have been granted.

The GAL also argues that the juvenile court erred by sustaining the objection to the expert testimony of Roya Paller, a forensic social worker, concerning whether irreparable harm to the Children would be caused if Parents' and Children's relationship was severed. **See** GAL's Brief at 52-53. Ms. Paller was retained to provide an opinion as to whether the Children wanted to be adopted by Grandfather. She observed the Children in Grandfather's home and also observed Children's interaction with Mother at

one, half-hour visit at Grandfather's home. In fact, the court questioned Ms. Paller about whether irreparable harm would be caused if Children were removed from Grandfather, to which she responded, yes. In response to a question as to whether irreparable harm would result if the Parents' parental rights were terminated, she indicated it would not. However, she acknowledged that her "objective was to assess attachment [of a] bond between the [C]hildren and their paternal [G]randfather and his fiancée [and] the [C]hildren's understanding of adoption and their wishes regarding adoption." N.T., 8/11/2021, at 30. Her objective was not to determine irreparable harm with regard to the Parents. Ultimately, the trial court's decision rested on safety concerns as to the Parents but relied on other testimony supporting a refusal to terminate the Parents' parental rights because of their bond with the Children.

In further support of the GAL's position as to the bonding determination required under Section 2511(b), she asserts error by the juvenile court in relying on Dr. Russell's testimony that termination of parental contact would cause irreparable harm to the Children. *See* GAL's Brief at 54-58. The GAL also contends that the Parents could continue to have contact with the Children even if their parental rights were terminated, claiming that the court only speculated that at some point Grandfather could cease to allow contact between the Parents and the Children. *Id.* at 55. Essentially, the GAL contends that the court's citation to some of the testimony supports

termination except for Dr. Russell's bonding evaluation issued a year earlier. *Id.* at 57-58.

We disagree and recognize that the juvenile court concluded that the Parents' bond with the Children was beneficial and should be maintained, but that the safety issues with Parents must continue to be addressed. The court further considered the preservation of the Children's bond with Grandfather, concluding it must be preserved. Thus, the decision recognized that severing the bonds between both Children and Parents, and/or Children and Grandfather, would cause irreparable harm to Children. This conclusion was the basis for the decision to give Grandfather permanent legal custody of the Children, preserve their bond with Parents, and ensure that the Children's lives would be lived in a safe and stable manner with Grandfather. These determinations by the court are not an abuse of discretion, are not harmful or prejudicial to the GAL, and are not unreasonable as shown by the evidence of record.

The GAL's last issue centers on the juvenile court's denial of her petition to change the Children's goal to adoption. *See* GAL's Brief at 59-62. Moreover, the GAL asserts error because no petition was filed requesting the appointment of PLC of the Children by Grandfather. To address the goal change argument, we recognize that our standard of review is abuse of discretion. *In re S.B.*, 943 A.2d 973, 977 (Pa. Super. 2008).

> To hold the trial court abused its discretion, we must determine its judgment was "manifestly unreasonable," that the court

disregarded the law, or that its action was "a result of partiality, prejudice, bias or ill will." **Id.** (quoting **In re G.P.-R.**, … 851 A.2d 967, 973 (Pa. Super. 2004)). While this Court is bound by the facts determined in the trial court, we are not tied to the court's inferences, deductions and conclusions; we have a "responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record." **In re A.K.**, … 906 A.2d 596, 599 (Pa. Super. 2006). Therefore, our scope of review is broad. **Id.**

**Id.**

In addition, we are guided by Section 6351(f) of the Juvenile Act, which provides for the disposition of dependent children. 42 Pa.C.S. § 6351(f). Specifically, "[t]he trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents." **In re S.B.**, 943 A.2d at 978. "Safety, permanency, and well-being of the child must take precedence over all other considerations." **Id.**, *quoting* **In re N.C.**, 909 A.2d 818, 823 (Pa. Super. 2006). In addition to determining whether the child should be returned to his or her parents, or placed for adoption, the court may decide that the child "will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child." 42 Pa.C.S. § 6351(f.1)(3).

Under the circumstances of this case, the juvenile court determined that PLC vesting in Grandfather was in the Children's best interest, in that it preserved their bond with the Parents and at the same time continued to ensure that the Children would receive ongoing safety, stability, and permanency provided by Grandfather. "[T]he trial court should consider the

- 12 -

importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child." ***In re K.M.***, 5e A.3d 781, 791 (Pa. Super. 2012). As noted previously in the court's opinion, it stated that DHS's position was "that permanent legal custody be explored as to the Grandfather was reasonable and just." Juvenile Ct. Op. at 7. Moreover, in the brief filed by DHS, it stated that "[a] PLC petition has not yet been filed in this case because necessary family profiles were delayed because [Grandfather] moved to Puerto Rico, which has delayed the process under the interstate Compact for Placement of Children. . . . DHS plans to file a PLC petition upon completion of the family profile and associated paperwork." DHS's Brief at 19 n.2. Thus, it is evident that a petition will be filed and proceedings will continue following the entry of this decision affirming the court's orders on appeal and remanding this matter. The court did not err in denying the GAL's petition for goal change.

Orders affirmed. Case remanded for proceedings consistent with the memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2022

- 13 -