J-S16001-24
J-S16002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2931 EDA 2023 |

Appeal from the Order Entered October 19, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No:  CP-64-DP-0000006-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: L.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2932 EDA 2023 |

Appeal from the Order Entered October 19, 2023
In the Court of Common Pleas of Wayne County
Civil Division at No:  CP-64-DP-0000006-2022

BEFORE:   STABILE, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.:           **FILED SEPTEMBER 11, 2024**

L.S. ("Father") and L.S. ("Mother") (collectively, "Parents") appeal from the October 19, 2023 order that changed the permanent placement goal of their daughter, K.S. ("Child"), born in June of 2018, from a primary goal of

---

[*] Former Justice specially assigned to the Superior Court.

reunification and a concurrent goal of adoption, to a primary goal of adoption and a concurrent goal of subsidized permanent legal custody ("SPLC").[1] We affirm.

The certified record reveals the following facts and procedural history. Wayne County Children and Youth Services ("CYS" or "the Agency") first became involved with this family in February of 2022, upon a referral from the Lackawanna County child welfare agency advising that Parents had a history of methamphetamine use, and that Child, then three years old, was in Mother's "full custody."[2] N.T., 10/17/23, at 6. According to the CYS assistant director, Stephanie Bryant, the Agency first conducted a drug screen on Mother on April 8, 2022, which was positive for methamphetamine. *See id.* at 7. On April 18, 2022, Mother visited the CYS office and appeared "very anxious," along with her paramour, who appeared "impaired." *Id.* They both refused to be drug tested at that time. *Id.* The juvenile court placed Child in the emergency protective custody of CYS on April 18, 2022, following the

_____

[1] Parents filed separate appeals. Because Parents raise similar issues concerning the same factual and procedural events in their respective briefs, we *sua sponte* consolidate the above-captioned cases for disposition pursuant to Pa.R.A.P. 513.

[2] The record reveals that Parents exercised custody pursuant to an order in the Lackawanna County Court of Common Pleas that awarded Mother "sole legal and physical custody" of Child. Order of Adjudication, 4/27/22, at 2. The date of the custody order is not provided in the record.

Agency's unsuccessful attempt to create an "out of home safety plan" for Child.[3] *Id.* at 8.

The court placed Child in shelter care three days later, following a hearing. On April 27, 2022, the court adjudicated Child dependent, and by dispositional order on May 31, 2022, it maintained Child's placement in foster care.

The court established the permanent placement goal of reunification and a concurrent goal of adoption for Child. In furtherance of achieving the goal of reunification, Parents were required to obtain drug and alcohol and mental health evaluations and follow all resulting recommendations, if any. Parents were also required to maintain stable housing. Finally, Parents were required to attend supervised visits with Child, which the court directed be scheduled "no less than twice per month." Order of Adjudication, 4/27/22. Father's visits occurred in the offices of the Lackawanna County child welfare agency. *See* N.T., 10/17/23, at 16. However, Mother's supervised visits occurred "in a therapeutic setting." *Id.* at 14.

Permanency review hearings occurred on September 30 and December 13, 2022, and again on May 30, 2023, following which the juvenile court issued permanency orders. During the first two review periods, the court found that Father had minimally complied with the permanency plan, and he

---

[3] The Honorable Matthew Meagher presided over Child's dependency proceedings in the underlying matter.

had made minimal progress in alleviating the circumstances that caused Child's placement. With respect to Mother, the court found that she had not complied at all with the permanency plan or progressed in alleviating her drug addiction in the first two review periods. During the third review period, the court found that Parents had both minimally complied with the plan requirements and had made minimal progress.

At the Agency's request, and by separate order following the third permanency hearing on May 30, 2023, the court found that aggravated circumstances existed as to Mother because she "has failed to maintain substantial and continuing contact with Child for a period of six months." Aggravated Circumstances Order, 5/30/23. Nonetheless, the court directed CYS to continue making reasonable efforts in furtherance of the permanency goal.

On August 17, 2023, CYS filed the subject goal change petition. By that date, Child was five years old and had been in placement for sixteen months.

The evidentiary hearing occurred on October 17, 2023. According to Ms. Bryant, the Agency's sole witness, Child was in kindergarten and doing "very well" both in school and in her foster home. N.T., 10/17/23, at 9, 17. Ms. Bryant testified that Child receives "trauma therapy" with the same therapist who oversees Mother's supervised visitation. *Id.* at 17-18.

CYS presented evidence that Father's compliance with the permanency plan during the review period was minimal, as was his progress in fulfilling it.

*See* N.T., 10/17/23, at Exhibit 2. With respect to Mother, CYS presented evidence that her compliance with the plan was moderate, but her progress in fulfilling it was minimal. *Id.*

Ms. Bryant testified that Father provided only one drug screen during the review period, which occurred in June of 2023, and it was positive for methamphetamine. *Id.* at 45, 51. She testified that Mother provided "a number of drug screens" during the review period, and "approximately six to eight" were positive for "amphetamines and methamphetamines." *Id.* at 47.

In addition, Ms. Bryant testified that Father lost his housing a few weeks prior to the goal change hearing "due to a drug bust in that home recently."[4] *Id.* at 51. As best we can discern, Father was then arrested on drug-related charges filed in Lackawanna County, which were pending at the time of the hearing. *Id.* at 26, 52. Ms. Bryant testified that Mother, who had been homeless, "moved [into Father's residence] when [Father] was incarcerated," during which the Agency caseworkers visited the home "at the end of August" and observed "drug paraphernalia, handguns, and drugs." *Id.* at 25, 52. Further, she stated that the room identified as Child's "room" had "needles" in it. *Id.* at 52. Ms. Bryant testified that Parents "were evicted" from that residence "at the end of September." *Id.* at 51-52.

---

[4] We glean from the record that Father's residence was in Lackawanna County. *See* N.T., 10/17/23, at 26.

Father appeared and was represented, but he did not testify or present any evidence. Mother testified on her own behalf during the hearing.

By order dated October 17, 2023, and entered on October 19, 2023, the court changed Child's primary goal to adoption and the concurrent goal to SPLC.[5] On November 14, 2023, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother filed a notice of appeal on November 16, 2023, and a concise statement on November 20, 2023.[6, 7] The juvenile court filed a

_____

[5] This Court has explained the SPLC is "an arrangement whereby a juvenile court discontinues intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated." *In re S.H.*, 71 A.3d 973, 977 (Pa. Super. 2013). Additionally, "[t]he custodian is typically provided a financial subsidy for the child by the local county children and youth agency." *Id*.

[6] Although Mother failed to file and serve the concise statement concurrently with the notice of appeal in contravention of Rule 1925(a)(2)(i), we do not dismiss her appeal. *See In Re K.T.E.L*, 983 A.2d 745, 747 (Pa. Super. 2009) (holding that the failure to file a concise statement of errors complained of on appeal with the notice of appeal will result in a defective notice of appeal, to be disposed of on a case-by-case basis). Herein, Mother filed the concise statement four days after filing the notice of appeal. Because this misstep was not prejudicial to any of the parties and did not impede the trial court's ability to issue a thorough opinion, the procedural error was harmless. *But see J.P. v. S.P.*, 991 A.2d 904 (Pa. Super. 2010) (appellant waived all issues by failing to timely comply with the trial court's direct order to file a concise statement).

[7] On November 15, 2023, Mother filed a motion for reconsideration of the goal change order wherein she alleged that she had obtained additional evidence in support of her testimony during the proceeding "that she had not used drugs." Motion for Reconsideration, 11/15/23, at ¶ 6. Specifically, Mother alleged that, on October 28, 2023, she "took a hair follicle drug test at Quest
*(Footnote Continued Next Page)*

single Rule 1925(a) opinion with respect to Parents' appeals on November 29, 2023.

On appeal, Parents question whether the trial court erred as a matter of law and/or abused its discretion in changing the placement goal from reunification to adoption. *See* Father's Brief at 7; Mother's Brief at 6. In addition, Mother raises the following issues for review:

> Whether the trial court erred as a matter of law and abused its discretion in refusing to grant Mother's motion for reconsideration so that Mother could enter into evidence her hair follicle test that proved that she was drug-free for at least 90 days to counter the caseworker testimony that Mother's in-office drug test was positive?
>
> Whether the trial court erred as a matter of law and abused its discretion in admitting the Agency's form over the objection of Mother's counsel because the exhibit contained inadmissible evidence?
>
> Whether the caseworker failed to assist Mother with housing?

Mother's Brief at 6 (cleaned up).

Our standard of review is well-settled. It "requires an appellate court to accept the findings of fact and credibility determinations of the trial court if

---

Diagnostics." *Id.* at ¶ 4. Mother subsequently alleged "that she found, on her own, a remote drug testing facility to have a hair follicle test to prove that she was drug-free." *Id.* at ¶ 7. Mother alleged she received the results on November 7, 2023, and that they were "'Negative,' which contradicts the caseworker's testimony regarding Mother's drug use." *Id.* at ¶ 5. Mother requested a new hearing to "introduce the results of the hair follicle drug test and to grant Mother additional time to reunify with the minor child, since she has remained drug-free for at least three months." *Id.* at ¶ 8. The juvenile court denied Mother's motion on November 15, 2023.

they are supported by the record[] but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion." *In the Interest of J.B.*, 296 A.3d 1234, 1238 (Pa. Super. 2023) (citation omitted). This Court has reasoned:

> Not only are our trial judges observing the parties during the hearing, but usually, as in this case, they have presided over several other hearings with the same parties and have a longitudinal understanding of the case and the best interests of the individual child involved. Thus, we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan. Even if an appellate court would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court.

*Id*. (citation omitted).

Section 6351 of the Juvenile Act governs the considerations relevant to a permanency review hearing, as follows.

> **(f) Matters to be determined at permanency hearing**. At each permanency hearing, a court shall determine all of the following:
>
> (1) The continuing necessity for and appropriateness of the placement.
>
> (2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.
>
> (3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.
>
> (4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

. . .

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child[.]

. . .

42 Pa.C.S.A. § 6351(f)(1)-(6), (9).

We have explained:

The trial court must focus on the child and determine the goal with reference to the child's best interests, not those of the parents. [*See* 42 Pa.C.S.A. § 6351(f)]. "Safety, permanency, and well-being of the child must take precedence over **all** other considerations." *In re N.C.,* [909 A.2d 818,] 823 [(Pa. Super. 2006)]. Further, at the review hearing for a dependent child who has been removed from the parental home, the court must consider the statutorily mandated factors. *Id.* "These statutory mandates clearly place the trial court's focus on the best interests of the child." *In re A.K.*, [906 A.2d 596,] 599 [(Pa. Super. 2006)].

When parents have cooperated with the agency, achieved the goals of their permanency plans, and alleviated the circumstances that necessitated the child's original placement, the agency should continue to put forth efforts to reunite the child with her parents. *In re A.K., supra.* However, "when the child welfare agency has made reasonable efforts to return a foster

- 9 -

child to . . . her biological parent, but those efforts have failed, then the agency must redirect its efforts towards placing the child in an adoptive home." ***In re N.C., supra*** at 823.

***In re S.B.***, 943 A.2d 973, 978 (Pa. Super. 2008); ***see also In the Interest of L.T.***, 158 A.3d 1266, 1276 (Pa. Super. 2017) (reiterating, "a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.") (citations omitted).

Turning to Father's single issue on appeal, we observe that his brief fails to comply with our Rules of Appellate Procedure in two instances. In the statement of the case, Father fails to provide

> [a] closely condensed chronological statement, in narrative form, **of all the facts which are necessary to be known in order to determine the points in controversy**, with an appropriate reference in each instance to the place in the record where the evidence substantiating the fact relied on may be found. ***See*** Rule 2132 (references in briefs to the record).

Pa.R.A.P. 2117(a)(4) (emphasis added). Father provides no substantive facts in the statement of the case in his brief. Similarly, in the argument section, Father fails to support his assertion that the court erred in changing the primary permanency goal to adoption with "a synopsis" of any "evidence on the point, with a reference to the place in the record where the evidence may be found." Pa.R.A.P. 2119(d) (Synopsis of evidence); ***see also*** Pa.R.A.P. 2119(c)(Reference to record). As such, Father has failed to support his argument with record evidence. For these reasons, we deem Father's brief devoid of meaningful review.

We recognize that Rule 2101 permits us to quash or dismiss an appeal for appellate briefs that are substantially defective. *See* Pa.R.A.P. 2101 (Conformance with Requirements); *see also Commonwealth v. Briggs*, 12 A.3d 291, 343 (Pa. 2011) ("The briefing requirements scrupulously delineated in our appellate rules are not mere trifling matters of stylistic preference; rather, they represent a studied determination by our [Supreme] Court and its rules committee of the most efficacious manner by which appellate review may be conducted. . . ."). Nevertheless, in this case, we will review Father's assertions as best as we can discern them.

Father acknowledges that neither he nor Mother have the "ability to provide a safe stable household" for Child, and so he asserts that Child's placement in foster care continues to be necessary and appropriate. Father's Brief at 11-12. However, Father argues that the court abused its discretion in changing the permanency goal because he "has made efforts to comply with the permanency plan." *Id.* at 12. Specifically, Father asserts that he is engaged "in Drug and Alcohol Treatment Services" ("DATS"), and that he attended 79% of his scheduled supervised visits with Child. *Id.* He baldly asserts that he "is making strides in his treatment and hopes to have his daughter back in his home imminently." *Id.* at 13.

Father's claims are without merit inasmuch as he failed to present any evidence to defend the petition during the hearing. Ms. Bryant testified that she was told by Mother that Father was attending DATS, but Ms. Bryant was

unable to independently confirm this assertion. *See* N.T., 10/17/23, at 26, 39, 41. In fact, Ms. Bryant testified that "[a] lot of his communication goes through [Mother,] so I have not personally had direct conversations with" him during the review period. *Id.* at 26.

Although Ms. Bryant testified that Father attended "approximately seventy-nine percent of his" supervised visits, and that "they go very well," she testified that a goal change to adoption is in Child's best interest due to Father's minimal progress in fulfilling the permanency plan. N.T., 10/17/23, at 16-17, 25-27. The juvenile court agreed and reasoned that Child had been in placement for eighteen months; Parents were unable to comply with the permanency plan; and "[t]he lack of permanency in Child's life cannot go on indefinitely." Trial Court Opinion, 11/29/23, at 3 (unpaginated). We discern no abuse of discretion. Thus, we affirm the goal change order with respect to Father.

We now turn to Mother's issues, which are inter-related, and so we review them together. Like Father, Mother acknowledges that Child's placement continues to be necessary and appropriate because she is homeless. *See* Mother's Brief at 16. Mother testified that, for the last two weeks, she had been "staying at a friend's house on his couch. . . ." N.T., 10/17/23, at 57. In addition, since the last permanency hearing on May 30, 2023, Mother acknowledged that she had been sleeping in a tent under a bridge "at certain times," despite having a home address approved for

purposes of probation.[8] *Id.* However, Mother testified that the address is "a drug house," and she preferred "the safety of a tent. . . ." *Id.* at 58. Mother testified that she had an appointment later the same week with the SOAR program, "a housing program for assistance for recovering addicts." *Id.* Ms. Bryant confirmed that Mother "is hoping to . . . get into an apartment that [SOAR will] accept where they will pay for her first six months' worth of rent." *Id.* at 50.

With respect to Mother's drug addiction, she concedes "more time is needed to achieve full compliance with the permanency plan." Mother's Brief at 17. Mother testified that she started attending DATS in May of 2023. *See* N.T., 10/17/23, at 62. Ms. Bryant explained that, although Mother attends her sessions at DATS, she has had "numerous positive screens for methamphetamine. The most recent one was the one I administered to her on October 4th." *Id.* at 21-22. Ms. Bryant testified on cross-examination by the guardian *ad litem*, as follows.

Q. Do you know what [M]other has been testing positive for?

A. Amphetamines and methamphetamines.

Q. And has that been addressed with her?

A. Yes.

Q. [W]hat has her response been?

---

[8] Mother was incarcerated during Child's dependency for an unspecified period of time. Mother testified that she was released from prison and placed on probation in April 2023. *See* N.T., 10/17/23, at 57-59.

A. She becomes very combative and defensive with the [A]gency and she does not take any ownership to [using it] . . . and blames a lot of people for that.

*Id.* at 47.

Indeed, Mother testified that she had been sober since December of 2022. *Id.* at 61. Mother reasoned as follows regarding her positive drug tests in August and September of 2023.

[W]hen [Father]'s home was raided he asked me to house sit. When I went to the house, I was cleaning up. I did find methamphetamine rocks on the floor in the spare bedroom of where his roommate was staying. I should have wor[n] gloves. I knew better. . . . Methamphetamine is absorbable through the skin. That is why I tested hot those three times. [F]rom August until I think it was the second week of September, I was in a contaminated house trying to clean that place up.

*Id.* at 61. With respect to a positive drug test on July 19, 2023, she testified that she "was smoking marijuana with a friend of mine down at the tents . . . and apparently the pipe that we were smoking from was contaminated." *Id.* When questioned regarding the positive drug test on October 4, 2023, Mother testified, "That I don't know. I maintain my sobriety and I again will subject myself to a hair follicle test to prove myself." *Id.* at 62.

In fact, Mother alleges in her next issue that, on a date unspecified after the goal change order was entered on the juvenile court docket, she obtained at her own expense a hair follicle drug test, and it was negative. This test result was the subject of Mother's motion for reconsideration, discussed *supra*, wherein she requested a new hearing to introduce the test result into

evidence. *See* Mother's Brief at 19-20; *see also* Motion for Reconsideration, 11/15/23, at ¶ 8. Mother argues that the court abused its discretion in denying the motion. *See* Mother's Brief at 19.

We deem Mother's issue waived for failure to provide any discussion of legal authority or to develop the issue in a way capable of review. *See In re M.Z.T.M.W.*, 163 A.3d 462, 465-466 (Pa. Super. 2017) (citation omitted) (reiterating that a claim is waived where an appellate brief fails to provide any discussion of the claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review). Even if not waived, we would conclude that this issue fails on the merits based on our deferential standard of review and the competent record evidence supporting the goal change order. *See Moore v. Moore*, 634 A.2d 163, 166 (Pa. 1993) ("A motion for reconsideration is addressed to the sound discretion of the trial court. . . .").

In her next issue, Mother argues that the court abused its discretion in admitting into evidence Exhibit 1, which was the Agency's "goal change permanency hearing worksheet." N.T., 10/17/23, at Exhibit 1. Specifically, Mother claims that the court abused its discretion pursuant to Pa.R.E. 901(a) ("Unless stipulated, to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is."). *See* Mother's Brief at 20-21. Mother asserts that Ms. Bryant testified that she

- 15 -

authored "some of" but, not all, of the worksheet marked as Exhibit 1. Mother's Brief at 21 (citing N.T., 10/17/23, at 36). In addition, Mother asserts that "Counsel for CYS failed to review and authenticate what part of the worksheet" she authored. **Id.**

However, at the conclusion of the Agency's case-in-chief, Mother's counsel objected to Exhibit 1 by stating, "Your Honor, I object to the worksheet being admitted into evidence. There's other things in there that were not admitted into testimony. So, I would object to that." N.T., 10/17/23, at 55. The court determined that Exhibit 1 "will be admitted subject to whatever the witness testified to that's contained in the worksheet." **Id.** at 56 (cleaned up).

> Our Supreme Court has held:
>
> On appeal, we will not consider assignments of error that were not brought to the tribunal's attention **at a time at which the error could have been corrected** or the alleged prejudice could have been mitigated. **Tindall v. Friedman**, 970 A.2d 1159, 1174 (Pa. Super. 2009). "In this jurisdiction one must object to errors, improprieties or irregularities at the earliest possible stage of the adjudicatory process to afford the jurist hearing the case the first occasion to remedy the wrong and possibly avoid an unnecessary appeal to complain of the matter." **Id.** (quoting **Thompson v. Thompson**, 963 A.2d 474, 475-76 (Pa. Super. 2008) (citation omitted)).

**State Farm Mut. Auto. Ins. Co. v. Dill**, 108 A.3d 882, 885 (Pa. 2015) (emphasis added); **see also id.** at 887 (citations omitted) (emphasis added) ("It is axiomatic that '[i]n order to preserve an issue for appellate review, a party must make a **timely and specific objection** at the appropriate stage

of the proceedings before the trial court. Failure to timely object to a basic and fundamental error will result in waiver of that issue.'").

Here, by waiting until the completion of the Agency's testimonial evidence to object to the admission of Exhibit 1, Mother's counsel failed to make a timely objection. In addition, Mother's counsel did not specifically object to the Agency's failure "to review and authenticate what part of the worksheet" Ms. Bryant authored. Mother's Brief at 21; *see also* N.T., 10/17/23, at 55. Thus, we conclude that this issue is waived.

To the extent that Mother argues in her final issue that CYS failed to make reasonable efforts to assist her in obtaining housing, her claim fails because she presents no record evidence to support it. *See* Mother's Brief at 20. Further, Ms. Bryant testified that Mother "has not shown consistent cooperation with the Agency at all." N.T., 10/17/23, at 21. Ms. Bryant testified that she spoke on the telephone to Mother on October 11, 2023, approximately one week before the goal change hearing, and "she was verbally aggressive towards me, using profanity, screaming at me over the phone when all I was trying to do was do a check-in. She yelled at me that she would no longer comply with me or the [A]gency. [I]t was very hard to de-escalate her again from that." *Id.* Thus, based on the totality of the record evidence, we are not persuaded by Mother's final claim. Because we discern no abuse of discretion by the court in changing Child's primary goal to adoption, we affirm the order.

Order affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/11/2024